Chief Judge Fuld.
This appeal raises important questions as to the propriety of a joint trial and the use of a confession obtained in the absence of counsel.
On the morning of October 27, 1964, when Isaac Wilson was found murdered in his restaurant in Rochester, suspicion almost immediately settled upon three men, the appellants Jackson and Bruton and their codefendant Alvin Peterson. Jackson, arrested that same evening, was held on a charge of vagrancy although the police blotter recited that he was “ Suspected of being one of the men involved in the [Wilson] Homicide ’[1] *449 When arraigned on the vagrancy charge the following morning, Jackson stated that he “would like to have a lawyer.” The case was thereupon adjourned for 48 hours to permit him to get one. However, no lawyer was furnished and, indeed, within 12 hours after he had requested counsel, the police began to question him, along -with the other suspects, about the killing. In the course of the interrogation, each of them accused the others of participation in the crime, Jackson and Bruton incriminating themselves as well. Some time prior to the trial, a Huntley hearing was held, during which Jackson sought unsuccessfully to suppress his statements on the ground that they had been taken from him, in the absence of counsel, after he had been arraigned upon a sham vagrancy charge and, indeed, after he had specifically asked for a lawyer.
From the statements of the three defendants adduced at that Huntley hearing, it was apparent that their respective defenses would be mutually antagonistic. And, what is equally important, each statement involved the other two men in such a manner and to such an extent as to render it impossible to restrict its contents to the particular defendant making it. Prompted by such considerations, each defetidant moved for a severance and a separate trial. The trial court denied the motions but directed the district attorney to eliminate the names of codefendants from the several statements and to indicate each defendant[1] * by a letter of the alphabet rather than by name.” Accordingly, the district attorney used the letter “ W ” for Bruton, “ X ” for Jackson and “ Y ” for Peterson.
As the record before us amply establishes, this attempted redaction proved a monumental failure. There were frequent and blatant lapses not only during the taking of the testimony but in the court’s own instructions.[2] In point of *450 fact, one of the witnesses, on cross-examination by Peterson’s counsel, identified “X” as the defendant Jackson. Thus, the name of each defendant and the letter assigned to him were so interchanged as to make it perfectly plain to the jurors that “ W ” stood for Bruton, “ X ” for Jackson and “ Y ” for Peterson.
The jury returned a verdict of guilty of first degree murder against all three defendants. The Appellate Division reversed the conviction of Peterson (27 A D 2d 695)—whose case is, therefore, not before us — and affirmed the judgments convicting the appellants Jackson and Bruton. (27 A D 2d 704, 705.)
It is a fundamental principle of evidence, embodied in the confrontation clause of the Sixth Amendment, that statements made outside the courtroom, without the opportunity for cross-examination, are admissible only against the person who made them. (See, e.g., Bruton v. United States, 391 U. S. 123; Douglas v. Alabama, 380 U. S. 415, 418-420; Pointer v. Texas, 380 U. S. 400, 403-406.) Consequently, when two or more defendants are tried jointly, a confession given by one defendant which inculpates a codefendant may not be received in evidence unless ‘ ‘ all parts of the extrajudicial statements implicating [the latter] can be and are effectively deleted”. (People v. La Belle, 18 N Y 2d 405, 410, n.; see, also, People v. Boone, 22 N Y 2d 476, 484-486; People v. Pollock, 21 N Y 2d 206, 214; People v. Burrelle, 21 N Y 2d 265, 270.) Where such effective redaction is not possible, where a defendant’s admission of guilt is “so interrelated in the involvement of an accomplice as to render it impossible for practical purposes to separate them ” (People v. Pollock, 21 N Y 2d 206, 214, supra), a joint trial must be eschewed and separate trials directed.
Although the trial judge in the present case admonished the jury not to use the statements of one defendant against any other, such limiting instructions have been deemed no ‘ ‘ adequate substitute for [defendant’s] constitutional right of cross-examination.” (Bruton v. United States, 391 U. S. 123, 137, supra; see, also, Roberts v. Russell, 392 U. S. 293, holding that the decision in the Bruton case “ is to be applied retroactively.”) *451 “ [W]here the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial ”, the Supreme Court declared in Bruton (391 U. S., at pp. 135-136), “ the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system may not be ignored.”
In the case before us, despite the use of letters as substitutes for names, each defendant was, to cull from our opinion in Burelle (21 N Y 2d, at p. 269), “unmistakably identifiable to the jury.” The names represented by the letters were easily ascertainable not only from the statements themselves but, as noted, from the testimony of the witnesses and the comments of the trial judge. Moreover, it was clear from the very outset of the trial that, in view of the defendants ’ incriminatory references to themselves and their codefendants, no effective redaction was possible. Each appellant, therefore, must be accorded a separate trial at which the extrajudicial statements of the others will be excluded.
This brings us to the question of the admissibility of Jackson’s confession upon the new trial we are directing. We agree that, since his statements were procured in the absence of counsel following his arraignment on a sham charge of vagrancy, they may not be received in evidence against him.
This court has strongly condemned the practice of using a vagrancy charge to hold “suspected criminals with respect to whom the authorities do not have enough evidence to make a proper arrest or secure a conviction on the crime suspected.” (Fenster v. Leary, 20 N Y 2d 309, 316; see, also, People v. Robinson, 13 N Y 2d 296, 301; People v. Davis, 13 N Y 2d 690, 691.) Accordingly, we have decided that statements taken from a defendant after he has been subjected to a sham arraignment, usually for vagrancy, are inadmissible in cases in which he has not been accorded his right to counsel. (See, e.g., People v. Robinson, 13 N Y 2d 296, supra; People v. Davis, 13 N Y 2d 690, supra; see, also, United States ex rel. Weinstein v. Fay, 333 F. 2d 815 [2d Cir.].)
It is manifest that the sole reason the police arrested Jackson for vagrancy was to hold and interrogate him concerning the *452 homicide. Immediately following receipt of advice from an informer that Jackson had been involved in the shooting, the police officer in charge instructed two members of the homicide squad to arrest Jackson for vagrancy. More, the police records, made at the time of the arrest, described him as a homicide suspect; the arraigning magistrate, treating him as such, set no bail and, once the interrogation began, the vagrancy charge was completely forgotten. In short, there is not the slightest indication that the police ever seriously considered a bona fide prosecution for that offense.[3]
In attempting to distinguish the present case from Davis (13 N Y 2d 690, supra) and Robinson (13 N Y 2d 296, supra), the district attorney relies upon an alleged admission by Jackson that he was an unemployed gambler, living off the proceeds of prostitution. Whether or not this would support a vagrancy charge is beside the point. Since the police employed the arraignment as a device to detain and question Jackson about the murder, his answers must be excluded even though he may, in fact, have been a vagrant. (See, e.g., People v. Davis, 13 N Y 2d 690, supra.) In the Davis case, for instance, the defendant was an unemployed drifter who allegedly committed a homicide during a fight over a half-empty wine bottle. Nevertheless, the court did not hesitate to characterize the vagrancy arraignment as a “ pretext ” (13 N Y 2d, at p. 691) and to hold, as noted, that the defendant’s confession should be excluded.
Moreover, quite apart from the consequences stemming from the vagrancy arraignment, Jackson’s statements must be ruled inadmissible. The use of a statement, taken in the absence of counsel after a defendant has requested a lawyer, violates “ ‘ the fundamental fairness essential to the concept of justicé ’ ([People v. Noble] 9 N Y 2d, at p. 574).” (People v. Donovan, 13 N Y 2d 148, 153; see, also, People v. Vella, 21 N Y 2d 249; People v. Gunner, 15 N Y 2d 226, 233; People v. Failla, 14 N Y 2d 178; People v. Meyer, 11 N Y 2d 162, 164; People v. Waterman, 9 N Y 2d 561, 565.) Jackson had expressly asked for a lawyer at the time he was arraigned. Although he was *453 granted a 48-hour adjournment to obtain counsel, the police began questioning him, in the absence of an attorney, within a few hours of his request. The use of statements taken under such circumstances clearly violated his constitutional right to counsel.
In conclusion, then, the appellants were denied a fair trial; each is entitled to be tried separately and to have the extrajudicial statements of his fellow conspirators excluded. In addition, no statement obtained from Jackson following his arraignment on the vagrancy charge, and no evidence or fruit developed therefrom (People v. Robinson, 13 N Y 2d 296, 301, supra; see, also, People v. Grossman, 20 N Y 2d 346, 349; People v. Rodriguez, 11 N Y 2d 279, 286), may be used against him.
The court expresses its appreciation to appellants’ assigned counsel for their very capable presentation of the appeal.
The judgments of conviction should be reversed and separate trials ordered in accordance with this opinion.
Judges Burke, Soileppi, Bergan, Keating, Breitel and Jasen concur.
Judgments reversed and new trials ordered in accordance with the opinion herein.

. Considerable doubt exists, it should be noted, that there was basis for the vagrancy charge. In any event, no information was ever filed and the charge was dismissed.

. The following excerpt from the trial judge’s charge demonstrates how difficult it was to maintain the anonymity of the letters and to conceal the identity of the defendants:
“The defendant [Peterson] had known [Wayne] Bruton in Utica, that Bruton and [Shelly] Jackson were pretty good friends and were friends of the defendant. That he was in Shelly’s car with Shelly and Wayne and Shelly asked Wayne—I fouled up here.
“ To repeat with the redaction. * * * That he [Peterson] said he had known W in Utica. That W and X were pretty good friends ahd Were both friends of his. That he was in X’s car with X and W, and X asked W to do the job for him ”.

. The police employed vagrancy charges to question four other persons about the murder, including two girl friends of Jackson and the last customer in the restaurant before the homicide. All of them were released after questioning.