█ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY LEON JOHNSON, Appellant.—Appeals from judgments of the County Court of Broome County, rendered June 14, 1974, convicting defendant on his plea of guilty to two indictments, each charging the crime of murder in violation of subdivision 1 of section 125.25 of the Penal Law. As a result of a forgery

investigation, the defendant, previously convicted of forgery, was picked up and taken to police headquarters. Upon arrival, he was given a *Miranda* warning report form, which he signed, acknowledging that he had been advised of his rights and was willing to discuss his possible involvement in a forgery. Subsequently, defendant executed a written statement by which he admitted certain forgeries. After it was ascertained that some of the forged instruments had been stolen from the same apartment house in which a woman was murdered, defendant was given a second *Miranda* warning form. This form clearly indicated that the police officers desired to interrogate the defendant concerning knowledge he might have about a murder. Defendant signed the warning form and indicated his willingness to discuss the murder and, after approximately three hours of questioning, denied any involvement. He did agree, however, to take a lie detector test. Defendant was thereupon arrested for the crime of forgery in the second degree and placed in a cell. Up to this point, he had spent a total of six hours in custody. There was no further questioning until the next day, at about 1:00 P.M., when the lie detector test was given. Upon completion of the polygraph examination, the defendant was again advised of his *Miranda* rights and again signed a form indicating he had been apprised of his constitutional rights. He was then questioned about the murder and, approximately three hours later, executed a statement admitting his involvement in the murder in question and was arrested for the crime of murder. Immediately thereafter defendant was questioned by other police officers of the Binghamton Police Department for a period of about four hours, after which he executed a written statement which implicated him in another murder. Subsequently, on March 11, 1974, the defendant was indicted for the two murders and the forgery. After a motion to suppress the written statements was denied, the defendant pleaded guilty to both murder charges. The forgery charge was dismissed. On this appeal, the defendant alleges that because the police failed to arraign him on the forgery charge without unnecessary delay after his arrest, he was unlawfully held by the police and, consequently, the two statements made while he was so held should have been suppressed. He also argues that he was not advised of his constitutional rights prior to the interrogation with respect to the second murder and, for this further reason, that this statement should have been suppressed. The defendant also asserts that the original arrest on the forgery charge was a sham arrest *(People v Jackson,* 22 NY2d 446). As to the failure of the police to arraign defendant on the forgery charge without unnecessary delay, it is conceded that the defendant was never arraigned on that charge in obvious violation of the Criminal Procedure Law. Although unnecessary delay in the defendant's arraignment is a relevant factor in asserting the voluntariness of any statement given, it is not dispositive of the issue *(People v Carbonaro,* 21 NY2d 271). The delay in arraignment is only one of several factors in determining the ultimate issue of whether a statement was involuntarily made *(People v Zakrzewski,* 36 AD2d 646). Even if it were conceded that the detention of the defendant was illegal, the fact that admissions are obtained from the defendant during a period of illegal detention does not, as a matter of law, render them inadmissible *(People v Briggs,* 36 AD2d 790). Applying the totality of circumstances test to determine the voluntariness of the statements, the defendant's detention did not render his statements about the murders involuntary or inadmissible. Defendant asserts that the failure of the police to readvise the defendant of his constitutional rights prior to the questioning about the second murder renders the confession inadmissible. Defendant was given his *Mi-*

*randa* warnings at about 4:00 P.M. on January 17, 1974, again at 7:00 P.M. on January 17, 1974 and again at 4:00 P.M. on January 18, 1974. On all three occasions the defendant voluntarily and intelligently waived his rights. The defendant was in continuous custody and there was no indication that the defendant was no longer the focal point of an investigation. It is not reasonable or likely that within eight hours of the third warning in two days the defendant had forgotten or no longer understood his constitutional rights. Furthermore, a written statement of those rights and waiver thereof was contained in the defendant's confession to the second murder. It is not necessary to repeat *Miranda* warnings immediately prior to the actual questioning *(People v Caruso,* 45 AD2d 804; *People v Manley,* 40 AD2d 907). Police interrogators must faithfully carry out *Miranda's* mandate at the threshold, but then they may proceed to elicit responses, however incriminating, without further specific warnings *(Gorman v United States,* 380 F2d 158). Statements taken from a defendant after he has been subjected to a sham arraignment, usually for vagrancy, are inadmissible in cases in which he has not been accorded his right to counsel. In the present case, however, the original detention and arrest was for forgery, a charge which the defendant admitted. It was in no manner a "sham" arrest as described in *People v Jackson (supra).* Judgments affirmed. Herlihy, P. J., Greenblott, Sweeney, Larkin and Reynolds, JJ., concur.