■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEE MYLES CORPORATION et al., Appellants, et al., Defendants.—Appeal by defendants Lee Myles Corp. and Charles George from two judgments (one as to each of them) of the Supreme Court, Queens County, both rendered October 24, 1975, convicting each of them of criminal possession of stolen property in the first degree, upon a jury verdict, and imposing sentence. Judgments reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. Defendant Charles George, the president of the defendant Lee Myles Corp., a company engaged in the business of installing and repairing automobile transmissions, was indicted in November, 1974, along with several other individuals, for the crimes of criminal possession of stolen property in the first degree, criminal possession of stolen property in the second degree (50 counts) and conspiracy in the third degree. The Lee Myles Corp. was also indicted as a codefendant pursuant to section 20.20 of the Penal Law, which imposes criminal liability on corporations for offending conduct committed by "a high managerial agent" of the corporation. Both defendants were convicted, after trial, of criminal possession of stolen property in the first degree. The indictment herein arose out of two deliveries of stolen automobile engines, with transmissions, to the main shop of the Lee Myles Corp. in Maspeth Queens, in December, 1973, and February, 1974, respectively. The only issue seriously contested during the trial was whether defendants George and Lee Myles Corp. knew that the engines were stolen, i.e., whether they had the requisite criminal intent (see Penal Law, §§ 165.40, 165.45, which provide, in pertinent part, that a "person is guilty of criminal possession of stolen property * * * when he knowingly possesses stolen property"). To meet their burden of proof on this issue, the People relied heavily on the testimony of three witnesses, Anthony Quatela, Alfred Modica, and Stanley Pitkiewicz. Each of them testified as to certain meetings and conversations which tended to inculpate the defendants. The credibility of these witnesses, however, was seriously impaired during the trial. Quatela, a Lee Myles franchisee, was a key witness for the prosecution. He was instrumental in setting up the sale and delivery of the stolen engines by Pitkiewicz to the Lee Myles Corp. He testified that defendant George came to see him before the first delivery of engines was completed and that he had then told George that the price of the engines was right "even though the engines were hot". No one else was present during that conversation. Quatela was arrested for possession of stolen transmissions at his Valley Stream dealership in Nassau County and was allowed to plead guilty to a misdemeanor. He was sentenced to a conditional discharge through the efforts of the Queens District Attorney. Moreover, by letter from the District Attorney of Queens County, dated July 16, 1974, Quatela was granted blanket immunity from prosecution in Queens County for any participation in the crimes charged at bar. Nevertheless, Quatela and the prosecutor did not disclose the grant of immunity to the Grand Jury. When Quatela testified before that body in October, 1974, the prosecutor elicited from the witness the fact that he had signed a waiver of immunity and that

he was willing to testify under it. The prosecutor made no mention to the Grand Jury of the prior grant of immunity to the witness pursuant to the letter of July 16, 1974, and thereby allowed Quatela's equivocal testimony to remain unquestioned. A defense motion for a mistrial based upon the prosecutor's conduct before the Grand Jury was denied. Moreover, the prosecutor continued to repeat this deception before the trial jury. During the trial, he elicited from Quatela that he had not received immunity at the time of his Grand Jury testimony. While the full extent of the immunity granted to Quatela was brought out by the defense during cross-examination, the prosecutor continued to deceive the jury in summation, when he referred to the fact that Quatela had testified before the Grand Jury under a waiver of immunity. Alfred Modica, a former vice-president and director of defendant Lee Myles Corp., testified that he had alerted defendant George to a rumor that the engines might be stolen; and that George, after denying that the engines were stolen, told him to stay out of the matter. According to Modica, George further stated that "the type of people that you're dealing with could wind up with a slug * * * in your head". No one else was present during this conversation. However, Modica's credibility was attacked by his admission on cross-examination that he had plans to take over as president of Lee Myles Corp. Modica also admitted that he had, in a telephone conversation on March 14, 1974, described defendant George to one of the codefendants as a "snake" and "animal" and that he wanted to "take him down". The third important prosecution witness was Stanley Pitkiewicz. Pitkiewicz was originally one of the defendants named in the indictment. In the midst of the trial, and after being identified by another witness as the man who had delivered the stolen engines to the Lee Myles plant, Pitkiewicz was allowed to plead guilty and to testify as a prosecution witness. The case against him was severed. While the trial court advised the jury not to speculate on the reasons for the severance, it failed to affirmatively instruct the jury not to draw any inference from the severance which would be unfavorable to the remaining defendants. Pitkiewicz, who admittedly was the chief of a stolen car ring, and who was promised leniency in sentencing in return for his co-operation, then proceeded to inculpate defendant George in his testimony. Specifically, Pitkiewicz testified that upon completing the first delivery of stolen engines, he had walked into defendant George's office for payment, whereupon George asked him: "Where are you getting all these stolen motors from?" According to Pitkiewicz, George further instructed him, during that same conversation, to bypass Quatela on any future deliveries. Again, no one else was present during that conversation. Indeed, the evidence against defendants was not of an overwhelming nature, especially in view of evidence adduced by the defense at trial that George had directed an inquiry, albeit a limited one, to ascertain the origin of the engines once he was alerted to the rumor that they were possibly stolen, and had co-operated with the police. In addition, two of the other individuals who were indicted along with George met with a more favorable fate at the trial. The indictment against Sal Crimi was dismissed during trial. Regarding the other individual defendant named in the indictment, Alex Gianoplus, it is to be noted that the testimony of Quatela and Pitkiewicz, if believed by the jury, inculpated Gianoplus in a degree equal to if not more than George; yet Gianoplus was acquitted. It is against this background that the several errors committed during the trial must be viewed. During the trial, Modica testified, over objection, that codefendant Gianoplus, had told him that "Mr. George knew that those engines were hot." A defense motion for a mistrial was denied and the trial court

instructed the jury to disregard Modica's testimony to that effect. Nevertheless, that testimony of Modica, wherein an incriminating statement made by appellant George's codefendant, was brought to the jury's attention, constituted serious error *(Bruton v United States,* 391 US 123; *People v Jackson,* 22 NY2d 446). A second error was committed during the direct testimony of Pitkiewicz. The prosecutor elicited the fact that Pitkiewicz had met George subsequent to the latter's indictment. He testified that he told George that he "would sit back and not say anything" if George paid him $30,000. According to Pitkiewicz, George said that "it would take him some time to get up the money and he would get back * * * within * * * a couple of weeks". Pitkiewicz testified that they met several weeks later, but that George "beat around the bush" and "didn't agree to anything". Clearly, the prosecutor attempted to show by that testimony that George had agreed to buy Pitkiewicz's silence. The record indicates, however, that the prosecutor knew that George had reported the $30,000 offer to the authorities and had been equipped with a tape recorder at the time of his second meeting with Pitkiewicz. Yet, when the defense counsel sought to thwart the impact of the testimony by calling to the stand the Assistant District Attorney to whom George had reported the offer, the prosecutor objected. The Trial Judge sustained the objection. This ruling constituted error as it prevented the jury from hearing all of the facts on the issue. This error was compounded when the prosecutor, in his summation to the jury, stressed George's meeting with Pitkiewicz, but did not mention the fact that George had reported Pitkiewicz's extortion attempt to the authorities. The prosecutor also tried to minimize Pitkiewicz's offer to George, by using the following misleading and irrelevant argument: "You are all familiar with the reputation of Mr. Nadjari. If Pitkiewicz did anything that was wrong, Nadjari would have done something about it." Finally, toward the end of the trial, defense counsel sought a ruling from the trial court, pursuant to *People v Sandoval* (34 NY2d 371), as to whether the prosecutor could cross-examine the defendant George, if he chose to take the stand, regarding allegations made in a pending civil suit against George, charging him with receiving kickbacks from firms servicing Lee Myles Corp. The trial court indicated that it would not preclude cross-examination by the prosecutor on that point, and George did not testify. In our view, that ruling by the trial court, made without a hearing, was improper. The propriety of inquiry into those unproven allegations was questionable at best. At the very least, in weighing the probative value of that inquiry, as opposed to the danger of the prejudice it presented to the accused, the trial court should have held a hearing before making its determination (see *People v Sandoval, supra).* While none of the above-described errors, standing alone, would warrant a new trial, we are of the view, in the light of all of the circumstances herein, that their cumulative weight had the effect of depriving the defendants of a fair trial. Accordingly, a new trial should be granted to defendants George and Lee Myles Corp. Hopkins, Acting P. J., Latham, Cohalan, Titone and Hawkins, JJ., concur.