OPINION OF THE COURT
Cooke, J.
The issue presented in this case is whether statements made by defendant are inadmissible because he had requested and was not provided with an attorney prior to questioning. After County Court denied defendant’s motion to suppress, he was convicted, upon a plea of guilty, of attempted rape in the first degree and two counts of sexual abuse in the first degree. The Appellate Division affirmed the judgment of convictions. We reverse.
On January 11, 1973, at about 3 o’clock in the afternoon, police entered upon the grounds of the Masonic Home in Utica, New York, to "pick up” defendant, who worked there and who was a suspect in a rape investigation. After identifying themselves, the policemen asked defendant to accompany them .to police headquarters to talk with them concerning a case in which he was a suspect, but they did not advise him of the specific charges. When defendant refused to enter the police car, the officers attempted to force him into the vehicle. In the course of this struggle, defendant called out words to the effect that someone should call his lawyer.
After getting one handcuff on the defendant, who continued to struggle, the officers agreed to let him speak with his supervisor. There, as testified by an officer, in his presence defendant requested the supervisor to "Call my wife and call my lawyer.” Then, apparently satisfied at having been permitted to have this conversation, defendant did not resist being placed in the police car and was taken away.
Upon arrival at police headquarters, defendant was informed of the nature of the charges against him and was advised of his rights as required by Miranda v Arizona (384 US 436). What occurred thereafter is in dispute, defendant claiming that he continued to request a lawyer and the police testifying otherwise. This factual issue was resolved against *36 defendant by County Court which found that, after being advised of his Miranda rights and prior to being questioned, defendant made no request to call his wife or a lawyer. Nevertheless, despite this determination, the need for our further inquiry is manifested by other findings.*
The record reveals that shortly after 3 o’clock on the same day that he was apprehended and immediately upon his arrival at the police station, the police secured a Miranda waiver and began to question defendant. At the same time, complainants were brought to the station to view defendant and between 4 and 5 o’clock of the afternoon of his arrest, after having been told by the police that he had been identified by at least one of the complainants, defendant made both oral and written statements concerning the crimes for which he was charged. Thus, within a period of two hours, a recalcitrant suspect, who accompanied the police without a struggle only after he has been able to request that someone go about obtaining a lawyer for him, is questioned and gives written statements concerning crimes, without the presence of counsel.
The facts present two questions: the first, the effect to be given to defendant’s request, made in the presence of police, that a third party take steps to obtain a lawyer for him; the second, the legal significance of a finding of a waiver of the right to, and in the absence of, an attorney within an hour of an indication by defendant that he desired such right to be honored.
As to the initial issue, the People assert that defendant’s first and only request for an attorney was not made to the police but to his employer, and hence there is lacking from this case a specific and clear request to the interrogating officers that defendant did not wish to speak with them until he had consulted with an attorney. This argument is without merit.
It is established that if a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no *37 questioning” (Miranda v Arizona, 384 US 436, 444-445, supra). That defendant’s request was made to a third party is of little significance, since the request was made in the presence of police. Under these circumstances, it would be an absurd formality to hold that defendant had not sufficiently indicated his desire for a lawyer. Therefore, we conclude initially that, having been apprised of defendant’s request for counsel, the police violated his constitutional rights by questioning him, in the absence of an attorney, within less than an hour of his request (see People v Jackson, 22 NY2d 446, 452-453; see, also, People v Noble, 9 NY2d 571; cf. Escobedo v Illinois, 378 US 478, 485-486).
 There remains the question of the legal effect of the success of the police in obtaining defendant’s subsequent waiver of the right to counsel. In this respect, it is recognized that "[a]ny statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence” (Miranda v Arizona, 384 US 436, 478, supra). Moreover, that a suspect has once asserted his right to remain silent does not, per se, prohibit his later being asked to speak upon reiteration of the requisite warnings, provided that the subsequent statement is not the product of "continued importunity or coercive interrogation in the guise of a request for reconsideration” (People v Gary, 31 NY2d 68, 70). However, as contrasted with a mere assertion of the right to remain silent, "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present” (Miranda v Arizona, 384 US 436, 474, supra; see Michigan v Mosley, 423 US 96, 104, n 10; see, also, concurring opn [White, J.] 423 US, at pp 109-110; United States v Kinsman, 540 F2d 1017).
Once an attorney has been requested, interrogation must cease, but this rule does not render inadmissible all statements made after a request for counsel. The defendant may make a spontaneous admission or simply change his mind and voluntarily make a statement (see United States v Grant, 549 F2d 942, 946, cert den 432 US 908; United States v Hodge, 487 F2d 945). The Miranda decision was designed to prevent further interrogation, and thus a statement is admissible if volunteered — even if an attorney is on the way (see Biddy v Diamond, 516 F2d 118, 123, cert den 425 US 950; see, also, Cobbs v Robinson, 528 F2d 1331, 1342, cert den 424 US 947).
In the matter before us, there was no spontaneous statement or admission. Even before defendant was advised of *38 his rights under Miranda (supra), he requested an attorney. Nevertheless, immediately upon his arrival at the police station, without any attempt to honor his request for counsel, the police obtained a form waiver of his rights and commenced questioning. Indeed, the lapse of time was only the period necessary to transport defendant from his employment to police headquarters (see Michigan v Mosley, 423 US 96, 105-107, supra; People v Chappie, 38 NY2d 112). We have previously held that "once the defendant has asserted his right * * * a subsequent waiver of that right is ineffective where * * * it is obtained only after continued and unbroken harassment” (People v Jackson, 41 NY2d 146, 152; cf. Brewer v Williams, 430 US 387). For the same underlying reason — that a waiver must be voluntary — we now hold that when a suspect makes known his desire for an attorney at the time of his arrest, upon reaching the station house the police may not immediately and actively seek a waiver of this right and then proceed to interrogate him in the absence of counsel.
Accordingly, the order of the Appellate Division should be reversed, the motion to suppress granted, the plea vacated, and the matter remitted to County Court for further proceedings on the indictment.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.

 The findings of the hearing Judge recite in part:
“5. Upon being taken into custody, defendant requested Donald Beekman, an Assistant Superintendent at the Masonic Home, to call-defendant’s wife by telephone and ask that she contact an attorney for defendant.
"6. Defendant resisted being taken into custody until he made his request to Beekman and then he consented to accompany the officers to police headquarters.”