**Jesus LOZADO, Petitioner,**

v.

**Eugene S. LeFEVRE, Superintendent, Clinton Correctional Facility, Dannemora, New York and Robert Abrams, Attorney General of the State of New York, Respondents.**

No. 82 Civ. 2244 (RJW).

United States District Court, S.D. New York.

Feb. 15, 1984.

Jesus Lozado, pro se.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for respondents; Frederick S. Cohen, Asst. Atty. Gen., New York City, of counsel.

ROBERT J. WARD, District Judge.

*Pro se* petitioner Jesus Lozado seeks a writ of habeas corpus pursuant to 28

U.S.C. § 2254. Petitioner has exhausted his available state court remedies, and so may properly petition this Court for habeas corpus relief. He has, however, failed to demonstrate any error of sufficient constitutional dimension to warrant such relief. Accordingly, the application is denied and the petition is dismissed.

## BACKGROUND

On June 21, 1979, Lozado was convicted, following a jury trial in the Supreme Court of the State of New York, Bronx County (Zimmerman, J.), on two counts of robbery in the second degree, *see* N.Y. Penal Law § 160.10, and one count of assault in the second degree, *see* N.Y. Penal Law § 120.-05. Lozado was sentenced to three concurrent terms of from seven and one-half to fifteen years, which he is currently serving at Clinton Correctional Facility in Dannemora, New York.

Following his conviction, petitioner appealed to the New York Supreme Court, Appellate Division, First Department, asserting the same constitutional argument that forms the basis of the instant petition. On September 29, 1981, the Appellate Division unanimously affirmed the conviction, without opinion; the New York Court of Appeals denied leave to appeal on November 20, 1981 (Jasen, J.). Lozado thereafter filed the instant petition for a writ of habeas corpus, which is his first such application to a federal court.

Petitioner's conviction is based on the violent mugging of one Leah Hirschtritt in the Bronx, New York on December 12, 1978. Hirschtritt was accosted in the lobby of her apartment building by a lone man, whom both Hirschtritt and another witness identified at trial as petitioner. After a brief struggle, the man fled with Hirschtritt's purse. Hirschtritt gave chase, accompanied by the female neighbor who had witnessed the mugging. After another violent exchange with her assailant, Hirschtritt followed him out of her apartment building. Once outside, the assailant handed Hirschtritt's purse to another man, and both men fled separately. Shortly after the robbery, two police officers, apparently assisted by another local resident, apprehended one William Lopez. Lopez was carrying Hirschtritt's purse, and was immediately identified by Hirschtritt as the man whom she had seen receive and flee with the purse. Lopez later pleaded guilty to a charge of second degree robbery, and was sentenced to a term of one and one-half to four and one-half years of incarceration.

## THE INSTANT PETITION

Lozado's petition for a writ of habeas corpus sets forth a single challenge to his state-court conviction. That challenge is based primarily on the admission at trial of testimony from the police officer who arrested William Lopez, regarding the officer's report of Lopez' arrest. The officer testified that Lozado's name was listed on the report as an "associate of the defendant," although Lozado's name was subsequently crossed out. Petitioner now contends that his name could have been listed on Lopez' report only as a result of hearsay statements made by Lopez upon his arrest. The admission of testimony regarding that part of Lopez' arrest report is therefore said to have deprived Lozado of his right to confront and cross-examine an accuser, Lopez, in violation of the Sixth and Fourteenth Amendments to the United States Constitution. That denial also allegedly deprived petitioner of his due process right to a fair trial.

### A. *The Challenged Testimony*

Lopez was apprehended near the scene of the robbery, and arrested shortly thereafter, by officer Bart Higgins, of the New York City Police Department. On direct examination by the People, Officer Higgins described the circumstances of Lopez' arrest and arraignment, as well as the subsequent referral of the case to the Senior Citizens Robbery Unit of the local police precinct. He also testified regarding his conversations with witnesses, his own observations at the crime scene, and his observations of Lozado's physical appearance

when the latter was arrested one week after the crime.

During recross-examination of Officer Higgins, petitioner's counsel questioned the witness at length about the report Officer Higgins had completed when Lopez was arrested. The Assistant District Attorney had not referred to that report on direct or redirect examination, nor sought to introduce it into evidence. This cross-examination was apparently intended to highlight supposed contradictions between the testimony given by various witnesses at trial, including Higgins, and the version of events described to Higgins by witnesses on the day of the robbery. At trial, the witnesses unanimously described a robbery committed by two persons: one assaulting Hirschtritt and taking her purse, and the other subsequently fleeing with the purse. Lopez' arrest report, however, is worded in a way that seems to suggest that both perpetrators committed each act in the chain of events. Officer Higgins offered an entirely reasonable explanation for his narrative on Lopez' arrest report; one which the jury apparently found satisfactory.

More important for present purposes, however, is the direct examination of Officer Higgins that followed the recross-examination. The Assistant District Attorney directed his questioning to a single fact: that the name China Lozado was listed on Lopez' arrest report under the heading "associates" of the arrestee. Defense counsel immediately objected, albeit in a somewhat ill-focused manner. In a colloquy at the side-bar, in which the objection was implicitly overruled, the trial court offered to give a curative instruction to the jury, and suggested that defense counsel was free to question Higgins more directly on the Lopez' arrest report. Defense counsel declined the curative instruction, indicating that he did not wish to highlight the damaging testimony. He nonetheless questioned Higgins once more to establish that Lozado's name had been crossed out on Lopez' arrest report. Higgins explained that after he had filled out the report he had been informed that only persons actually arrested with the subject arrestee were to be listed as "associates."

Although not explicitly challenged here, other testimony and statements made at Lozado's trial are relevant to the instant petition, and were challenged by Lozado on his direct appeal. Construing the *pro se* application liberally, the Court views those other matters as within the scope of the petition. These matters relate to the fact that the name on Lopez' arrest report was not "Jesus Lozado," petitioner's legal name, but "China Lozado." Despite the best efforts of defense counsel at trial, the Assistant District Attorney managed to remove any doubt that "China" was petitioner's nickname. Over the objections of defense counsel, the prosecutor questioned Detective John Moretti, who had arrested Lozado one week after the robbery, as to whether Lozado had disclosed a nickname to Detective Moretti. Moretti testified that Lozado had stated that his nickname was "China."

The trial court seems to have been of two minds about testimony regarding the "China" nickname. On the one hand, Justice Zimmerman overruled defense counsel's objection, and allowed the Assistant District Attorney to question Detective Moretti regarding the nickname. On the other hand, the trial court explicitly instructed the prosecutor that the nickname was not to be mentioned in the People's summation, unless the defense made such mention necessary by attacking Officer Higgins' credibility. That instruction was flatly disobeyed by the prosecutor during summation, prompting a defense motion for a mistrial. Although Justice Zimmerman denied the motion for a mistrial, he did deliver the following curative instruction during the jury charge:

Of course, you heard a lot of evidence in this case. It turns out that probably has no bearing at all on your work. For example, there was some testimony about China. It has nothing to do with this case at all. There is nothing logical that you can draw from the fact, whether

you find that to be the fact, that the defendant is known by the name China or not known by the name China. It doesn't prove anything in this case whatsoever.

Trial Transcript at 381.

### B. *Exhaustion*

 Respondents' contention that petitioner has failed to exhaust available state remedies is disingenuous. The claim asserted by Lozado in the instant petition is virtually indistinguishable from the arguments he presented on direct appeal to the Appellate Division of the New York Supreme Court, and to the New York Court of Appeals. It is well settled that a petitioner need not pursue available state remedies if the asserted constitutional claim has already been presented to the state judiciary upon a properly preserved record by way of direct appeal. The exhaustion requirement was not meant to give the state courts more than one full and fair opportunity to put their constitutional house in order. If there is no need for developing additional facts in a state collateral proceeding, requiring a petitioner to repetitiously exhaust every available remedy would be unnecessarily time consuming and burdensome to both petitioner and the state courts. *See Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971) (per curiam); *Roberts v. LaVallee,* 389 U.S. 40, 42–43, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967) (per curiam); *Brown v. Allen,* 344 U.S. 443, 447–50, 73 S.Ct. 397, 402–03, 97 L.Ed. 469 (1953).

### C. *The Merits*

 The right to confront and cross-examine witnesses, constitutionally embodied in the Confrontation Clause of the Sixth Amendment, has long been recognized as essential to due process. *See e.g., Chambers v. Mississippi,* 410 U.S. 284, 294–95,

93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) (citing cases). The Confrontation Clause has of course not been construed literally, for such a construction would require the exclusion of virtually all hearsay. *See Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980). In the instant case, petitioner relies on the Confrontation Clause as applied in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1973).

*Bruton* was decided in the context of a joint trial of two alleged accomplices. The Supreme Court held that the Confrontation Clause forbade the admission of a confession by one of the defendants where that confession inculpated not only the confessing party, but also his alleged accomplice. The high court rejected the use of curative instructions to the jury in that context, observing that, "The naive assumption that prejudicial effects can be overcome by instructions to the jury ... all practicing lawyers know to be unmitigated fiction...." 391 U.S. at 129, 88 S.Ct. at 1624 (quoting *Krulewitch v. United States,* 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring)).

Lozado contends that the holding in *Bruton* forbade the admission at his trial of the testimony of Officer Higgins, despite the curative instructions offered and given by Justice Zimmerman.[1] In addition to *Bruton,* petitioner's state appellate brief cited several cases in which the courts of New York have applied the constitutional teachings of *Bruton. See e.g., People v. Jackson,* 22 N.Y.2d 446, 293 N.Y.S.2d 265, 239 N.E.2d 869 (1968); *People v. Geoghegan,* 68 A.D.2d 279, 416 N.Y.S.2d 802 (1st Dep't 1979), *aff'd,* 51 N.Y.2d 45, 431 N.Y.S.2d 502, 409 N.E.2d 975 (1980) (per curiam); *People v. Tufano,* 69 A.D.2d 826, 415 N.Y. S.2d 42 (2d Dep't 1979).

The facts in the instant case do not present a classic *Bruton* situation. At no time in petitioner's trial was any confession by William Lopez, or indeed even any explicit statement by him, admitted into evi-

---

**1.** *See infra* note 3.

dence. Petitioner contends, however, that the admission of Officer Higgins' testimony regarding the appearance of Lozado's name on Lopez' arrest report was functionally equivalent to admitting an inculpatory hearsay statement by Lopez himself. The jury, according to petitioner, would have inferred from the appearance of Lozado's name on the arrest report that Lopez had made statements to Officer Higgins inculpating Lozado, *i.e.*, statements of the kind held inadmissible in *Bruton.*

Putting petitioner's legal argument aside for a moment, there is some merit to his factual conclusions. While the inference that Lopez had inculpated Lozado is not the only one the jury could have made, the trial court, the prosecutor, and defense counsel all recognized the potentially damaging effect of Officer Higgins' testimony based on the likelihood of such a jury inference. Any such statements by Lopez would of course be hearsay, as implicitly acknowledged by both the trial court and the prosecutor. *See* Trial Transcript at 240. Justice Zimmerman nonetheless allowed the Assistant District Attorney to question Officer Higgins regarding Lopez' report, commenting to defense counsel that the latter had "opened up" the report by cross-examining Officer Higgins about the report. In addition, the prosecutor twice returned to the issue of the nickname, firmly establishing that "China Lozado" was petitioner's nickname.[2]

Returning to petitioner's legal argument in the instant petition, the Court notes that the issue before it is not whether the laws of the State of New York permitted the admission at petitioner's trial of the disputed testimony, but rather whether the admission of that testimony violated the Confrontation Clause of the Sixth Amendment or the broader constitutional requirements of due process. *See generally Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). The federal courts of appeals, and in particular the Second Circuit, have developed a substantial body of case law applying the teachings of *Bruton.* Those cases typically have focused on whether hearsay statements by an accomplice can be rendered admissible if accompanied by a cautionary jury instruction, or whether the constitution requires redaction of the statements or separate trials so that an accomplice's statements are not admitted at all. The Second Circuit has focused upon two requirements that distinguish statements which cannot be rendered admissible even if accompanied by an appropriate jury instruction. Such statements must be both "clearly inculpatory" and "vitally important to the [prosecution's] case." *United States v. Wingate*, 520 F.2d 309, 313 (2d Cir.1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976) (quoting *United States v. Catalano*, 491 F.2d 268, 273 (2d Cir.), *cert. denied*, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974)); *see United States v. Rubio*, 709 F.2d 146, 155 (2d Cir.1983); *United States v. Burke*, 700 F.2d 70, 85 (2d Cir.), *cert. denied*, — U.S. ——, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *United States v. Marin*, 669 F.2d 73, 83 (2d Cir.1982); *United States v. Perry*, 643 F.2d 38, 51 (2d Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981); *United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978).

The criteria articulated and applied in these cases clearly establish that the testimony admitted at Lozado's trial is not the sort which cannot be cured by a cautionary

---

**2.** The Court must observe that petitioner's nickname was of no apparent relevance to the case, except to make more plausible an inference the jury was *not authorized to make, i.e.,* that the name "China Lozado" appearing on Lopez' arrest report referred to petitioner. Such a fact could only be of interest if the appearance of Lozado's name was being considered for its truthfulness. The admissibility *vel non* of testimony regarding petitioner's nickname may, therefore, raise questions of state evidentiary law. As the following discussion indicates, however, such testimony has not compromised petitioner's federal constitutional rights.

instruction to the jury.[3] Officer Higgins' testimony regarding Lopez' arrest report may well have had significant impact on the jury. Such a conclusion is reinforced by the fact that the jury asked to see the arrest report during deliberations, and asked to have Officer Higgins' disputed testimony read back. Nonetheless, this testimony cannot be viewed as "vitally important to the [prosecution's] case," as that term has been construed in this Circuit. The core of the People's evidence in this case was the identification of Lozado as the perpetrator by both the victim herself and the only other witness to the crime. Both the prosecutor and defense counsel recognized at trial that the case stood or fell on the credibility and reliability of those two witnesses. Most of the trial was accordingly directed to the reliability of those two witnesses, and their considerable opportunity to view the perpetrator. The testimony of Officer Higgins, in contrast, was relatively secondary. Indeed, the testimony was not even elicited until the People's third round of direct examination of Officer Higgins, primarily to rehabilitate the witness after an attack on his credibility. These facts contrast sharply with those necessary to satisfy the *Bruton* test of

vital importance to the prosecution's case, *see, e.g., United States v. Knuckles,* 581 F.2d at 313; *United States v. Wingate,* 520 F.2d at 313–14; *see also United States v. Danzey,* 594 F.2d 905, 917–19 (2d Cir.), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979), and therefore may not serve as the basis for habeas corpus relief.[4]

## CONCLUSION

Petitioner has failed to establish the existence of any federal constitutional claim warranting habeas corpus relief. Accordingly, the petition is dismissed. Because the Court finds the petition presents no questions of substance on which the Court of Appeals should rule, the Court declines to issue a certificate of probable cause pursuant to 28 U.S.C. § 2253.

It is so ordered.

---

**3.** Petitioner appears to have been provided with two opportunities for curative jury instructions regarding the testimony disputed here. Following defense counsel's objection to the examination of Officer Higgins about Lopez' arrest report, the trial court asked, "What do you want me to do?" Trial Transcript at 256. There followed a rather informal discussion, *id.* at 256–59, during which defense counsel apparently abandoned his half-hearted request for a curative instruction. *Id.* at 256 ("Should we tell the jury to disregard it?"). ·When the prosecutor pointed out that defense counsel was free to question Officer Higgins directly about the arrest report, defense counsel indicated that he did not wish to call attention to the damaging testimony. *See also supra* at 1176.

After summation, during which the prosecutor mentioned the related matter of petitioner's nickname, defense counsel made a formal request for a curative jury instruction. Trial Transcript at 321. While the curative instruction given was rather vague, *see supra* at 1177, it was precisely the instruction requested.

**4.** Having determined that the testimony in dispute was not vital to the prosecution's case, this

Court need not reach the question of whether statements by petitioner's accomplice were "clearly inculpatory." Nonetheless, the Court observes that this second prong of the *Bruton* test is also not satisfied in this case. Unlike cases typically scrutinized under *Bruton,* no actual hearsay statement by an accomplice was admitted here. Rather, petitioner contends that the testimony of Officer Higgins led the jury to *infer* that Lopez had made inculpatory statements. This Court has already observed that the jury might well have inferred that Lopez had made such statements. By the same token, the jury had no basis to infer that Lopez had mentioned Lozado in any clearly inculpatory way. For example, in *United States v. Rubio,* 709 F.2d at 154–55, the defendant's name was given to police in a wholly exculpatory, albeit false, statement by an accomplice. That statement was held not to satisfy the *Bruton* test.

This Court cannot say with certainty that the jury did not speculate that Lopez' inferred statements were highly inculpatory. The nature of any such statements would nonetheless be based entirely on unfounded speculation. As such, any inferred statements by Lopez cannot be classified as "clearly inculpatory."