VAUGHAN AND SONS, INC.,
Appellant,

v.

The STATE of Texas, Appellee.

No. 339–83.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 16, 1987.

Robert C. Bennett, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Ray Elvin Speece, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant, Vaughan and Sons, Inc., a Texas corporation, was convicted by a jury of criminally negligent homicide. V.T.C.A., Penal Code, § 19.07. The information alleged that appellant, acting through two of its agents, caused the death of two individuals in a motor vehicle collision. See V.T.C.A., Penal Code, § 7.22(a)(1). Punishment was assessed by the trial court at a fine of $5,000.00. See V.T.C.A., Penal Code, § 12.-51.

On appeal the appellant contended, inter alia, that the "penal code provisions for prosecution of corporations and other artificial legal entities do not extend to any type of criminal homicide, therefore the trial court erred in failing to grant appellant's motion to set aside the information."

The Court of Appeals agreed and reversed the conviction. *Vaughan and Sons, Inc. v. State,* 649 S.W.2d 677 (Tex. App.—Texarkana 1983). The Court of Appeals wrote in part:

"A superficial reading of the negligent homicide statute construed with the Penal Code definition of 'person' [§ 1.07(27)] indicates that a corporation could indeed be found guilty of the crime charged. But the actual question before this court is whether a legislative intent plainly appears which includes corporations within the criminal field of negligent homicide by use of the term 'person.'"

After reviewing other statutes, etc., the Court of Appeals concluded:

"Therefore, without a stronger, clearer indication from the legislature that the policy for holding corporations criminally responsible for homicide has changed, we decline to so hold. We should make haste slowly when it is in the direction of holding either an individual or a corporation criminally liable for a crime, especially one so serious as homicide, when it is committed by someone other than the person charged."

Thus, the Court of Appeals ruled that even though the statutes so state, the Legislature could not have intended to include corporations within the class of culpable parties because corporations are unable to formulate "intent" in their "artificial and soulless" form. 649 S.W.2d at 678.

We granted the State's petition for discretionary review to determine the correctness of the holding of the Court of Appeals.[1]

At common law a corporation could not commit a crime. See generally 10 W. Fletcher, Cyclopedia of Corporations, § 4942, at 620 (1978); Henn Corporations, § 186 (1961); W. LaFave & A. Scott, Criminal Law, § 33 (1972).[2] "This position was predicated on the rationale that a corporation had no mind and hence could not entertain the appropriate criminal intent required for all common law crimes. Also, the absence of physical body precluded imprisonment, the primary punishment available at common law. Illegal acts of a corporate agent were not imputed to the corporate entity because they were considered ultra vires and therefore without the authority of the corporation." Clark, *Corporate Homicide: A New Assault on Corporate Decision Making,* Notre Dame Lawyer, Vol. 54, pp. 911–912 (June 1979). See also Wharton's Criminal Law, 14th Ed., Vol. 2, § 111, pp. 80–81.

The rule that a corporation could not be tried for any criminal offense was once widely accepted, not just in Texas, but throughout the nation. Today, however, the general rule is that a corporation may be held liable for criminal acts performed by its agents acting on its behalf. See generally 18B Amer.Jur.2d, Corporations, §§ 2136 and 2137 (1985); 19 C.J.S., Corporations, § 1358, p. 1073.[3]

Prior to the 1974 Penal Code and the conforming amendments thereto corporate criminal responsibility was recognized only to a very limited extent in Texas. Searcy and Patterson, *Practice Commentary,* V.T.C.A., Penal Code, § 7.22. Texas was then apparently the only state that did not provide for general criminal liability. See Hamilton, *Corporate Criminal Liability in Texas,* 47 Texas Law Rev. 60 (1968); Hamilton, *Texas Business Organizations,* § 239 (1973); Lebowitz, *Recent Development in Texas Corporation Law—Part I,* 28 Southwestern Law Journal 641, 662, n. 148 (1974). See also Hildebrand, *Corporate Liability for Torts and Crime,* 13 Texas Law Rev. 253, 275 (1935); Keeton & Searcy, *A New Penal Code for Texas,* 33 Tex.B.Journal 980, 985 (1970). "While there were a few statutes that imposed criminal liability in limited situations, mainly for pollution or willful violations of economic regulatory legislation,[4] even these were virtually negated by the absence of a procedure under which Texas corporations

1. It was the State's grounds of review that the holding of the Court of Appeals that the Legislature did not intend for V.T.C.A., Penal Code, § 19.07, to be applied to corporations, misconstrued the statute, was in conflict with cases from this Court relating to statutory construction, and was a holding of such importance to state law it should be reviewed and settled by this Court.

2. Lord Holt, C.J., stated: "A corporation is not indictable, but the particular members of it are." Anonymous, 88 Eng.Reg. 1518 (KB 1701). See also 1 W. Blackstone, Commentaries* 476: "A corporation cannot commit treason, or felony, or other crime, in its corporate capacity: though its members may, in their distinct individual capacities." For early American cases see *Androscoggin Water Power Co. & Bethel Steam Mill Co.,* 64 Me. 441 (1875); *State v. Great Works Milling & Mfg. Co.,* 20 Me. 41 (1841).

3. In 1 Wharton's Criminal Law, 14th Ed., Vol. 2, § 111, pp. 80–81, it is written:

"At early common law, a corporation being an artificial person and an inanimate legal entity, was deemed incapable of committing a crime, it could not entertain a culpable mental state and it could not be physically punished.

"This incapacity no longer exists. A corporation is now capable of committing a crime and is capable of being punished therefor. *The circumstances under which it is liable are commonly described by statute.*" (Emphasis supplied.)

4. See, e.g., Article 4477–5b, §§ 1(2), 4 (Supp. 1974) (air pollution), Texas Water Code Ann., §§ 21.551–.553 (1972) (water pollution); Article 6008, §§ 2, 23, V.A.C.S. (1962) (regulation of natural gas production) and other statutes listed in note 149 of *Lebowitz,* supra at p. 662.

could be prosecuted." *Lebowitz*, supra, at p. 662. See also Practice Commentary to V.T.C.A., Penal Code, § 7.22, supra; *Thompson v. Stauffer Chemical Co.*, 348 S.W.2d 274 (Tex.Civ.App.–Waco 1961) writ ref'd n.r.e.

Three earlier criminal cases left considerable doubt whether a corporation could be successfully prosecuted as a possible defendant. *Guild v. State*, 79 Tex.Cr.R. 603, 187 S.W. 215 (1916); *Judge Lynch International Book and Publishing Co. v. State*, 208 S.W. 526 (Tex.Cr.App.1919); *Overt v. State*, 260 S.W. 856, 859 (Tex.Cr.App.1924). *Guild* discussed the impossibility of punishing a corporation with imprisonment,[5] *Judge Lynch International Book and Publishing Co.* discussed the failure of the term "person" as used in the statute under which prosecution was brought to include corporations,[6] and *Overt* discussed the same matter as well as the imputing of intent, and the lack of procedure to bring corporations into court.[7]

*Thompson v. Stauffer Chemical Co.*, supra [348 S.W.2d 274 (Tex.Civ.App.–Waco 1961, writ ref'd n.r.e.], involved an appeal from a district court judgment holding void a judgment of a Justice of the Peace Court, and enjoining the Justice of the Peace from issuing execution thereon. A corporation was charged by a criminal complaint with permitting fumes and gases detrimental to health to escape its premises in violation of Article 695, V.A.P.C. (1925), which provided that the misdemeanor offense could be punishable by a fine not to exceed $100.00 upon conviction. The Justice of the Peace issued a civil citation and attached a copy of the criminal complaint thereto. It was executed upon the vice president and general manager of the corporation. When the corporation did not appear for trial, the State made out a prima facie case, and the Justice of the Peace entered a judgment of conviction reciting the corporation "appeared in absentia" and assessed a $100.00 fine. The corporation sought relief in district court and obtained a favorable ruling

5. In *Guild,* the defendant, an agent of a corporation, was charged and convicted of violation of the "pure feedstuff law." His conviction was affirmed. In response to the contention that the statute was invalid because it made the agent guilty as well as the principal, the Court wrote:
 "It is the general principle of law in this state that the person who actually commits a crime shall be punished therefor, whether he be acting on his own initiative or is an agent for a principal ... It is with rare exceptions our law provides for the punishment of a corporation for the violation of a criminal statute.... The statute prescribes as a punishment for its violation a fine, or imprisonment in the county jail, or both. If a corporation was insolvent, there would be no way whatever of enforcing a conviction of it. It could not be imprisoned either as a part of the punishment or for failure to pay the money fine. Hence, in order to enforce the law, it is essential that the agent who commits the crime shall be punished therefor instead of his principal, a corporation."

6. In *Judge Lynch International Book and Publishing Co.,* supra, the corporation or firm was convicted of the crime of engaging in the business of an emigrant agent without having first obtained a license from the Commissioner of Labor Statistics. The punishment assessed was 30 days in county jail and a fine of $100.00. On appeal the Attorney General confessed error on the ground that "there is no provision of the law in this state under which a firm or corporation can be indicted or tried under the criminal

laws." The Court reversed and stated that the statute referred only to "persons" which did not include corporations and that the proper "person" to charge was the individual committing the criminal act proscribed by the statute.

7. In *Overt,* supra, the defendant, an agent of a corporation, was charged under the Net Container Act of the 38th Legislature. In dictum the Court wrote:
 "Section 7 of the Act is also quoted above. It penalizes 'any person.' Section 9 is also set out. It says that within the term 'person' is included any firm, company, copartnership, corporation, association, or organization, joint-stock companies and receivers and distributing agents, and all officers, directors, and managers of such concerns. We cannot imagine a more comprehensive list of those sought to be held punishable. Practically all the persons named should be held guiltless under our laws unless knowledge or willfulness could be imputed to them. We bring criminals personally before the courts and juries under our procedure and enforce punishment fixed by confinement in the jails or penitentiaries. Corporations, companies, firms, copartnerships, joint-stock companies, or associations could not as such be prosecuted as criminals and could not be brought in person before the courts; and a law that undertakes to so hold them, must be held unreasonable, indefinite, and of doubtful construction...."

and an injunction. An appeal followed. The Court of Civil Appeals did not rest its judgment upon the ground that a corporation was not included within the pronoun "whoever" in Article 695, supra, but rested its decision on the following basis:

"It is our view that the matters of which appellant complains are matters which the Legislature will have to afford relief for, if any relief be afforded. *There is no procedure in the Code of Criminal Procedure whereby a corporation as such, can be prosecuted for misdemeanor in Texas, and we cannot give our approval to the method employed.* The Corporation was never arrested; nor entered an appearance; was tried and convicted 'in absentia;' and we think that such Justice of Peace Court judgment of conviction was void." (Emphasis supplied.)

The Texas Supreme Court refused the writ of error, "no reversible error." Thus there was no practical procedure for bringing a corporation into court for criminal prosecution.

Former Penal Code Article 22 did define "person," but it was held that the word used therein extended only to a corporation as the "person" or "party" who, or whose property was affected by the crime. *Cochrain v. State,* 248 S.W. 43 (Tex.Cr.App. 1922). Further, most of the Penal Code statutes, in defining offenses, used the term "whoever" or "person" without any indication that corporations were to be included therein.

It is not difficult to see why it could be said that prior to the 1974 Penal Code "a corporation or a partnership could not be indicted or tried under the criminal laws of Texas." Tex.Jur.3d, Vol. 18, Criminal Law, § 161, p. 232.[8]

In 1968 Professor Robert W. Hamilton's treatise, *Corporate Criminal Liability in Texas,* 47 Texas Law Review 60, was published. In it he reviewed the history of corporate criminal liability in Texas, or rather the lack of it and the steps necessary for criminal prosecution of corporations. In his advocacy of corporate criminal liability he offered in his treatise at pp. 77–85 proposed amendments to the Texas Penal Code which were made available to the State Bar Committee on the Revision of

the Penal Code on which he served as a reporter. To overcome legal obstacles of the past Professor Hamilton advocated a definition of "person" used in various Penal Code statutes be broadened to embrace a corporation, that there be a corporate liability statute, procedural provisions for bringing or summoning corporations into court for criminal prosecution, and ample statutory authority for the imposition of fines upon conviction rather than the impossible imprisonment. It appears that said State Bar Committee and subsequently the Legislature addressed some of Professor Hamilton's concerns. See Anderson, *Corporate Criminal Liability for Specific Intent Crimes and Offense of Criminal Negligence—The Direction of Texas Law,* St. Mary's Law Journal, Vol. 15, p. 231 (1984).

With that background we turn to the 1974 Penal Code.

V.T.C.A., Penal Code, § 1.07(a), provides: "(a) *In this Code:*

* * * * * *

"(17) 'Individual' means a human being who has been born and is alive.

* * * * * *

"(27) *'Person' means an individual, corporation, or association.*" (Emphasis supplied.)

And added to § 1.07(a) in 1979 was (9.1) which provides:

"(9.1) 'Corporation' includes nonprofit corporation, professional association created pursuant to statute, and joint stock companies."

V.T.C.A., Penal Code, § 7.22 (Criminal Responsibility of Corporation or Association), provides:

"(a) If conduct constituting an offense is performed by an agent acting in behalf of a corporation or association and within the scope of his office or employment, the corporation or association is criminally responsible for an offense defined:

"(1) in this code where corporations and associations are made subject thereto;

"(2) by law other than this code in which a legislative purpose to impose criminal responsibility on corporations or associations plainly appears; or .

---

**8.** "However in rare instances provision was made for the punishment of corporations for the violations of criminal statutes by means of

penalties to be recovered by suit, in contradiction to a fine or imprisonment therefor." Tex.Jur.3d, Vol. 18, Criminal Law, § 262, p. 233.

"(3) by law other than this code for which strict liability is imposed, unless a legislative purpose not to impose criminal responsibility on corporations or associations plainly appears.

"(b) A corporation or association is criminally responsible for a felony offense only if its commission was authorized, requested, commanded, performed, or recklessly tolerated by:

"(1) a majority of the governing board acting in behalf of the corporation or association; or

"(2) a high managerial agent acting in behalf of the corporation or association and within the scope of his office or employment." [9]

V.T.C.A., Penal Code, § 12.51 (Authorized Punishments for Corporations and Associations), enacted as a part of the 1974 Penal Code, was amended in 1977. Such statute authorized the imposition of fines upon a corporation if convicted of a criminal offense. No imprisonment was provided.[10]

And Chapter 17A of the Code of Criminal Procedure was added in 1973 [11] to provide the procedural rules for bringing corporations into court with regard to its criminal responsibility. Article 17A.01, V.A.C.C.P., provides in part:

"(a) This Chapter sets out some of the procedural rules applicable to the crimi-

nal responsibility of corporations and associations. Where not in conflict with this chapter, the other chapters of this code apply to corporations and associations.

"(b) *In this code* [Code of Criminal Procedure], unless the context requires a different definition

"(1) * * *

"(4) *'Person,'* 'he' and 'him' *include corporation* and association." (Emphasis supplied.)

Title 5 of the Texas Penal Code (Offenses Against Persons) includes Chapter 19 (Criminal Homicide).

V.T.C.A., Penal Code, § 19.01 (Types of Criminal Homicide), provides:

"(a) A *person commits criminal homicide if he* intentionally, knowingly, recklessly, or *with criminal negligence causes the death of an individual.*

"(b) *Criminal homicide is* murder, capital murder, voluntary manslaughter, involuntary manslaughter, or *criminally negligent homicide."* (Emphasis supplied.)

V.T.C.A., Penal Code, § 19.07 (Criminal Negligence Homicide), provides:

"(a) A *person* commits an offense if he causes the death of an individual by criminal negligence.

---

**9.** Subsection (b) was amended by Acts 1975, 64th Leg., p. 913, ch. 342, § 4, eff. Sept. 1, 1975.

**10.** Said § 12.51 provides:

"(a) If a corporation or association is adjudged guilty of an offense that provides a penalty consisting of a fine only, a court may sentence the corporation or association to pay a fine in an amount fixed by the court, not to exceed the fine provided by the offense.

"(b) If a corporation or association is adjudged guilty of an offense that provides a penalty including imprisonment, or that provides no specific penalty, a court may sentence the corporation or association to pay a fine in an amount fixed by the court, no to exceed:

"(1) $20,000 if the offense is *a felony of any category;*

"(2) *$10,000 if the offense is a Class A* or Class B *misdemeanor;* or

"(3) $2,000 if the offense is a Class C misdemeanor.

"(c) In lieu of the fines authorized by Subsections (a) and (b)(1) and (b)(2) of this section, if a court finds that the corporation or association gained money or property or

caused personal injury, property damage, or other loss through the commission of a felony or Class A or Class B misdemeanor, the court may sentence the corporation or association to pay a fine in an amount fixed by the court, not to exceed double the amount gained or caused by the corporation to be lost, whichever is greater.

"(d) In addition to any sentence that may be imposed by this section, a corporation that has been adjudged guilty of an offense may be ordered by the court to give notice of the conviction to any person the court deems appropriate." (Emphasis supplied.)
Amended by Acts 1977, 65th Leg., p. 1917, ch. 768, § 1, eff. June 16, 1977.

"1977 Amendment. Raised fines in subds. (b)(1) to (3) from $10,000 to $20,000, from $2,000 to $10,000, and from $200 to $2,000, respectively; in subsec. (c), inserted 'or caused personal injury, property damage, or other 'loss' and added 'or caused by corporation to be lost, whichever is greater'; and added subsec. (d)."

**11.** Acts 1973, 63rd Leg., p. 979, ch. 399, § 2(D), eff. Jan. 1, 1974.

"(b) An offense under this section is a Class A misdemeanor."[12] (Emphasis supplied.)

V.T.C.A., Government Code, § 311.005 (Code Construction Act—General Definitions), provides in part:

"*The following definitions apply* unless the statute or content in which the word or phrase is used requires a different definition.

"(1) * * *

"(2) *'Person' includes corporation*, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association and any other legal entity...." (Emphasis supplied.)

V.T.C.A., Government Code, § 311.011(b), provides:

"(b) *Words* and phrases *that have acquired a* technical or *particular meaning*, whether *by legislative definition* or otherwise *shall be construed accordingly*." (Emphasis supplied.)

V.T.C.A., Penal Code, § 1.05 (Construction of Code), provides:

"(a) *The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.*[13]

"(b) Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015 and 311.021 through 311.032 of the Code Construction Act (Chapter 311, Government Code) apply to the construction of this code."[14] (Emphasis supplied.)

The Legislature, recognizing that for years Texas was the only jurisdiction in which corporations bore no general criminal responsibility, and aware of the previous roadblocks in case law to the prosecution of corporations for criminal offenses, enacted statutes to remedy the situation. As earlier noted, the Legislature defined "person" in both the Penal Code [V.T.C.A., Penal Code, § 1.07(a)(27), and the Code of Criminal Procedure (Article 17A.01(b), V.A.C.C.P.)] so as to expressly embrace corporations. To leave no doubt the Legislature also similarly defined "person" in the Code Construction Act (Government Code, § 311.005). In the accusatory and definitional part of most offenses found in the Penal Code the term "person" (as defined elsewhere) is used without qualification. Observe that this was done in V.T.C.A., Penal Code, § 19.01, defining criminal homicide, and in the statute in question in this case, V.T.C.A., Penal Code, § 19.07 (Criminal Negligent Homicide).[15] And the Legislature was not content to rest upon the definitions of "person" to impose corporate criminal responsibility. It also enacted § 7.22 of the Penal Code as general statute to indicate its intention that corporations were to be rendered criminally responsible for the conduct of its agents acting within the scope of its employment in committing offenses. For fear there would

---

**12.** V.T.C.A., Penal Code, § 12.31, provides that one guilty of a Class A misdemeanor shall be punished by

"(1) a fine not to exceed $2,000;

"(2) confinement in jail for a term not to exceed one year; or

"(3) both such fine and imprisonment."

where a corporation is convicted of a Class A misdemeanor. See V.T.C.A., Penal Code, § 12.51(b)(2).

**13.** Formerly the common law rule that penal statutes were to be construed strictly was often applied.

**14.** The aforegoing Subsection (b) of said § 1.05 was amended in 1985 (Acts 1985, 69th Leg., ch. 479, § 69, eff. Sept. 1, 1985). The original subsection (b) read "Unless a different context is required by the context, Sections 2.01, 2.02, 2.04, 2.05 and 3.01 through 3.12 of the Code Construction (Article 5429b–2, Vernon's Texas Civil Statutes) apply to the construction of this code." This subsection was in effect at the time

of the alleged offense, the instant trial and original appeal.

**15.** It is observed that the Practice Commentary to V.T.C.A., Penal Code, § 7.22, provides in part:

"For what kinds of offenses may legal entities be held criminally responsible? Better drafting would have made this question easier to answer, but comparison between the 1970 draft and this section as enacted yields an answer in two parts. First, the definition of the offense, whether in this code or elsewhere, must evidence a legislative purpose to cover corporations and associations. This intent is easiest to recognize in code offenses, as provided in Subsection (a)(1), because most of them use the term 'person,' which is defined in section 1.07 to include corporation and association, to identify who may commit the offense. For example, theft and fraud as defined in this code cover legal entities but bigamy and incest do not because the latter use the term 'individual' in identifying the actor."

be no procedure for summoning corporations into court Chapter 17A was added to the Code of Criminal Procedure. And to overcome the fact that corporations cannot be placed in jail or imprisoned, the Legislature provided a schedule of fines in V.T.C.A., Penal Code, § 12.51 in lieu of imprisonment where corporations were convicted.

The intention of the Legislature could hardly be made clearer given the history, the reform intended and the literal meaning of the statutes involved. Taken collectively, the foregoing statutes furnish the basis for overcoming the obstacles which in the past have prevented the criminal prosecution of corporations.

 It is the State's contention that a corporation is a "person" under general definitional statute of the Penal Code, § 1.07(a)(27), see also Art. 17A.01(a)(4), V.A.C.C.P., and Government Code, § 311.-005, and since the crime of criminally negligent homicide can be committed by a "person" (V.T.C.A., Penal Code, § 19.07), it follows that the crime can be committed by a corporation. We agree. *People v. Ebasco Services, Inc.*, 77 Misc.2d 784, 354 N.Y.S.2d 807 (N.Y.1974), is instructive. There the court wrote at p. 811: "Since no definition of 'person' as applied to the actual committing of the homicide has been included by the Legislature in the homicide article, the court must look to the broader definition of 'person' contained in the overall definitional article of the Penal Law." Looking to the definitional article (§ 10.0017) the Court found that "person" included "a public or private corporation." The conviction was upheld. See also *Commonwealth v. McIlwain School Bus Lines, Inc.*, 283 Pa.Super. 1, 423 A.2d 413 (1980); *State v. Adjustment Department Credit Bureau, Inc.*, 94 Idaho 156, 483 P.2d 687 (1971).

In *State ex rel. Vance v. Hatten*, 600 S.W.2d 828 (Tex.Cr.App.1980), we said:

"Arguments are made by respondent that the legislature did not intend for the statute to be given its literal meaning. However, we must agree with the maxim stated in *Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99 (1961) that:

"'If Parliament does not mean what it says, it must say so.'

If this Court were to reach the conclusion by speculation that the legislature did not intend what it clearly and unambiguously stated, we would still be without authority to change the specific terms of the statute, where such language is plain and unequivocal."

The Court of Appeals reasoned that Chapter 19 of the Texas Penal Code (1974) groups all degrees of homicide in one unit; that "Sec. 19.01(a) implies that whoever is capable of committing criminal homicide must also be capable of intent, knowledge, and recklessness ... not just criminal negligence" that it is "readily apparent that a corporation is unfit to intentionally or knowingly cause the death of an individual...." The Court thus, would not, without a stronger, clearer indication from the Legislature, hold that corporations were criminally responsible for homicide. We do not agree.

It is obvious that the Court of Appeals' language in its opinion that "[W]e should make haste slowly...." came from the language in *Commonwealth v. Punxsutawney*, 24 Pa.C.C. 25, 48 Pits.Leg.J. 42 (1900) [16] (refusing to hold a street railway company criminally liable for the crime of assault in ejecting a passenger). And the conclusion of our Court of Appeals that there was insufficient evidence of the legislative intent to impose corporate criminal liability under § 19.07 of the Texas Penal Code was apparently influenced by the same holding in *People v. Rochester Railway & Light Co.*, 195 N.Y. 102, 107, 88 N.E. 22, 24 (1909). Since the turn of the century when these cases were decided much water has passed under the bridge, and many new bridges have been built. In fact the whole surrounding landscape has changed. *Punxsutawney* no longer has any precedential value, see *Commonwealth v. McIlwain*, supra, and even *Rochester Railway* itself indicated that legislative action could change the result there reached.[17]

---

**16.** Quoted in *Commonwealth v. McIlwain School Bus Lines, Inc.*, 283 Pa.Super. 1, 423 A.2d 413 (1980) at p. 418.

**17.** In Section IV of Anderson, *Corporate Criminal Liability for Specific Intent Crimes and Offenses of Criminal Negligence—The Direction of Texas Law*, 15 St. Mary's Law Journal, 231, 246–249 (1984), the author explains extremely well how the decision of the Court of Appeals in the instant case is inconsistent with other jurisdictions, and how some of the authorities relied upon by that court are out of date, "unpersuasive, as well as off point." Such discussion need not be repeated here but is clearly applicable.

The Court of Appeals stated that those jurisdictions which have addressed the issue of corporate criminal liability "... are divided as to criminal responsibility for personal crimes such as homicide or rape, though the majority still agrees that a corporation cannot commit a crime requiring specific intent." No authority is cited.

In 18B Amer.Jur.2d, § 2137, pp. 959–960, it is stated:

"It is now *generally accepted* that a corporation may be indicted for a crime to which a specific intent is essential, and that the intent is essential, and that the intent of its employees or agents may be imputed to the corporations." (Emphasis supplied.)

Numerous cases are cited. See also *Corporation's Criminal Liability for Homicide*, 45 A.L.R. 4th, § 4(a), 1021, 1030.

In 19 C.J.S., Corporations, § 1363, pp. 1075–1076, it was pointed out that:

"A corporation may be criminally liable for crimes which involve a specific element of intent as well for those which do not, and, although some crimes require such a personal, malicious intent that a corporation is considered incapable of committing them, nevertheless under the proper circumstances the criminal intent of its agent may be imputed to it so as to render it liable, the requisites of such imputation being essentially the same as those required to impute malice to corporations in civil actions."

See also and cf. *Corporation's Criminal Liability for Homicide*, 45 A.L.R., 4th, 1021.

After recognizing that some courts have held that a corporation cannot be guilty of homicide in absence of a specific statutory provision, it is stated in 19 C.J.S., Corporations, § 1364, p. 1077:

"However it has been said that a definition of certain forms of manslaughter may be formulated which would be applicable to a corporation and make it liable for various acts of misfeasance and nonfeasance when resulting in homicide. Thus, a corporation has been held subject to prosecution for involuntary manslaughter where there was nothing in the definition of the crime or the punishment provided which would make it impossible to hold a corporation liable." See *State v. Lehigh Valley R. Co.*, 103 A. 685, 90 N.J.Law 372 (1917), and *Granite Construction Co. v. Superior Court of Fres-no County*, 197 Cal.Rptr. 3, 149 C.A.3d 465 (Court of Appeals, 5th Dist. 1983).

An examination of decisional law from other states indicates that where there are corporate criminal responsibility statutes similar to our own Texas statutes, it appears to have been consistently held that a corporation is liable for specific intent crimes and offenses of criminal negligence.

In *Commonwealth of Kentucky v. Fortner LP Gas Co., Inc.*, 610 S.W.2d 941 (Kentucky Court of Appeals, 1980) (Discr. Review Denied), the indictment involved manslaughter in the second degree. A corporate truck with defective brakes had struck two children, killing one, while they were crossing the highway after alighting from a school bus. The circuit court sustained the motion to dismiss the indictment relying upon *Commonwealth v. Illinois Central Railway Co.*, 152 Ky. 320, 153 S.W. 459 (1913). The *Illinois Central* case had been a definitive case on corporate responsibility for criminal conduct for many years. Basically, the holding of that case was that "corporations cannot be indicted for offenses which derive their criminality from evil intention or which consist in a violation of those social duties which appertain to man and subjects." The holding was predicated on two things. One, was that in 1913 there was no separate punishment for corporations provided by Kentucky statute, and two, the court was not willing, in a criminal prosecution, to extend the definition of the word "person" in § 475 of the Kentucky statutes to include corporations. On appeal of the ruling dismissing the indictment the Kentucky Court of Appeals decided that *Illinois Central* must be considered in light of its date, statutory changes and its total holding. The Kentucky Court of Appeals observed that there was now a statute imposing criminal liability upon a corporation, second there was a general statutory definition of "person" which included corporations, and a punishment statute which imposed fines upon a corporation for violation of offenses. The court concluded that these statutes were envisioned in *Illinois Central* which might support an indictment. The order to dismiss the indictment was reversed. Our Texas statutes are almost identical to the Kentucky statutes.

In *State v. Adjustment Department Credit Bureau, Inc.*, 94 Idaho 156, 483 P.2d 687 (1971), the corporation was convicted of the offense of extortion, a special

intent crime. On appeal it contended that it was not a "person" within the meaning of the criminal statutes and could not be found guilty of a crime unless specifically provided for in the statute involved. The Idaho Supreme Court noted that another state statute defined terms used in the various statutes including the term "person" which embraced a corporation as well as a natural person. The Court found the definitional statute to be controlling and that corporate criminal liability for the offense of extortion could be imposed. As a a result of an error in the jury charge, however, the cause was reversed and remanded.

In *Granite Construction Co. v. Superior Court of Fresno County*, 149 Cal. App.3d 465, 197 Cal.Rptr. 3, 45 A.L.R., 4th, 1011 (Court of Appeal, Fifth Dist.1983), the Court denied the corporation's petition for peremptory writ of mandate challenging its indictment for manslaughter following the accidental death of seven workers at a power plant under construction by the corporation. The California Appellate Court held that corporations may be prosecuted for manslaughter since provisions of the state's penal code defined "person" to include a corporation as well as a natural person, that the manslaughter provision of the penal code did not limit its scope to act by natural persons, and the code provided appropriate punishment for corporate crimes. The corporation argued that the Legislature had not intended to make corporations responsible for crimes when the penal code was enacted. In rejecting this contention the Court observed that traditional notions of fair play and substantial justice are not offended by applying the clear meaning of statutory terms, for when a statute's language is clear, its plain meaning should be followed.

*Commonwealth v. McIlwain School Bus Lines, Inc.*, 423 A.2d 413 (Pa.Super.Ct. 1980), held that a private corporation may be held criminally liable for homicide by vehicle. In resolving the statutory construction problem presented the Court held that the Pennsylvania statute defining "person" included a corporation, that there was a general corporation liability statute, and while the homicide by vehicle statute did not itself specifically include a corporation it did use the term "any person," and that such was sufficient to subject the corporation to criminal liability for homicide by vehicle. See also *People v. Ebasco Services, Inc.*, supra.

There are a number of additional cases from other states which discuss statutes that are similar to Texas statutes and which assign corporate criminal liability for specific intent crimes and offenses of criminal negligence. See, e.g., *Commonwealth v. Beneficial Finance Co.*, 275 N.E.2d 33 (1971); *People v. Lee Myles Corp.*, 53 A.D.2d 873, 385 N.Y.S.2d 339 (1976); *State v. Oregon City Elks Lodge No. 1189, BPO Elks*, 17 Or.App. 124, 520 P.2d 900 (1974); *Commonwealth v. J.P. Mascaro & Sons*, 266 Pa.Super. 8, 402 A.2d 1050 (1979). See also Anderson, *Corporate Criminal Liability for Specific Intent Crimes and Offenses of Criminal Negligence—The Direction of Texas Law*. 15 St. Mary's Law Journal 231 (1984). See also *United States v. Van Schaick*, 134 F. 592 (C.C.N.Y.1904); *People v. Warner-Lambert Co.*, 51 N.Y.2d 295, 434 N.Y.S.2d 159, 414 N.E.2d 660 (1980), cert. den. 450 U.S. 1031, 101 S.Ct. 1742, 68 L.Ed.2d 227.

And in *Granite Construction Co. v. Superior Court*, supra, which held that a corporation may be prosecuted for manslaughter, the Court found that corporations can form intent, be reckless, and commit acts through its agent. The Court noted that California had well established methods to impute criminal responsibility to corporations, so that a codification of rules for imputing intent, criminal negligence, or recklessness was unnecessary. The Court reasoned that if corporations are liable for crimes of specific intent, they should be equally liable for crimes of criminal negligence or recklessness.

In Brickley, *Corporate Criminal Liability*, Vol. I (Evolution of Liability), § 209, p. 31, it was written:

"As courts gave express recognition to the capacity of corporations to commit crimes requiring general intent, open hostility to retention of a 'fanciful theory in process of abandonment' surfaced and brought to the forefront consideration of the question whether there remained a sound reason for drawing a distinction between imputing general and specific intent to corporations. After all, corporations have been held vicariously liable for intentional torts including assault and battery, libel and malicious prosecution. Because it would be no more difficult theoretically to impute specific intent for a crime than a tort, the only point remaining in dispute was the question whether the corporation lacked capacity to form evil intention. The sug-

gestion that it did was met with little patience. 'The same law that creates the corporation may create the crime, and to assert that the Legislature cannot punish its own creature because it cannot make a creature capable of violating the law does not ... bear discussion.' The proposition simply was untenable.

"Beginning in the late nineteenth and continuing into the early twentieth century, courts wrestling with this issue began breaking down the last barrier to imposing on corporations the full range of liabilities to which natural persons were subject. During this period corporations were found to be properly subject to criminal prosecution for such divers offenses as ... even manslaughter."[18] (Footnotes omitted.)

See also Brickley, *Corporate Criminal Accountability: A Brief History and an Observation*, 60 Washington University Law Quarterly, pp. 393–423.

Given the history of corporate criminal liability in Texas prior to the 1974 Penal Code, the various provisions of the 1974 Penal Code and other statutes enacted to bring about a change, the clear statutory language, and the analogous case authority, we reject the reasoning of the Court of Appeals and conclude that a corporation may be criminally prosecuted for the misdemeanor code offense of criminally negligent homicide under V.T.C.A., Penal Code, § 19.07, for corporations have been made subject thereto. See V.T.C.A., Penal Code, § 7.22(a)(1).[19]

The Court of Appeals judgment is reversed and the cause remanded to that court for consideration of appellant's points of error.

CLINTON, Judge, concurring.

One troubling aspect of dissenting opinion by Judge Teague is its utter failure to articulate precisely wherein the Legislature ran afoul of due process in V.T.C.A. Penal Code, Chapter 7, Subchapter B. As best his premises may be understood, they are Subchapter B was not enacted "under its police power" and § 7.22(a)(1) imposes upon a corporation "strict, automatic criminal liability" for negligent acts of its employees and agents. See at pp. 808, 809, 810, 811.

Judge Teague errs in perceiving "public welfare offenses" are derived from police power whereas an offense to which a corporation is made subject under the penal code or some other law, and criminally responsible through § 7.22(a)(1), is not. Call them what one may, the latter is an exercise of police power as much as the former.

Of course it is hornbook law, supported by a wealth of authority, that "police power" is an attribute of sovereignty by which its lawmaking body may enact laws to protect peace, safety, health, happiness and

---

**18.** Citing *United States v. Van Schaick*, 134 F.2d 592 (C.C.N.Y.1904); *State v. Lehigh Valley R.R.*, 90 N.J.L. 372, 103 A. 685 (1917).

**19.** We are well aware of the arguments against the imposition of corporate criminal responsibility. Professor Hamilton, in favor of such responsibility, stated in his treatise, *Corporate Criminal Liability in Texas*, 47 Tex.Law Rev. 60, 68 (1968), "Further, Texas and other jurisdictions not recognizing criminal liability have managed to struggle along for many years without any evident deficiency in law enforcement." In Lebowitz, *Recent Developments in Texas Corporation Law—Part I*, 28 Southwestern Law Journal 641 (1974), the author, in discussing V.T.C.A., Penal Code, § 7.22(b), at p. 664, stated, "On the other hand, responsibility for a felony offense is limited to cases where its commission was either initiated, performed or recklessly tolerated by a majority of the board acting in their capacity as such or by a high managerial agent acting for the corporation and in the scope of his office or employment. *Given these limits, there are not likely to be many felony prosecutions.*" (Emphasis supplied.) In Coleman, *Is*

*Corporate Criminal Liability Really Necessary?*, 29 Southwestern Law Journal 908 (1975–76), the author of the comment discusses the deterrent effect of corporate criminal liability questioning whether the fines imposed will result in any more than a "license fee" to engage in illegal acts, or whether the fines will punish innocent shareholders or whether the fines will be passed on to consumers. It was observed that juries are quicker to convict corporations than individuals, etc. One commentator has urged, inter alia, that an economic—legal inquiry into the supposed effectiveness of corporate criminal liability be undertaken and the mens rea requirements of the common law be rigidly adhered to. Mueller, *Mens Rea and the Corporation*, 19 V.Pitt.Law Rev. 21 (1957). See also and cf. *Corporate Criminal Liability for Acts in Violation of Company Policy*, 50 Georgetown Law Journal 547 (1962).

The wisdom of legislation is for the Legislature and not for the courts in construing statutes. See generally 53 Tex.Jur.2d, Statutes, § 124, p. 176; *Vance v. Hatten*, 600 S.W.2d 828, 830 (Tex.Cr.App.1980).

general welfare of the people. 12 Tex. Jur.3d 610–611, "Constitutional Law, F. Police Power," § 80. Manifestly, in its broadest sense police power is exercised in taking measures to prevent and suppress crime and to preserve order, *State v. City of Dallas*, 319 S.W.2d 767, 774 (Tex.Civ. App.—Dallas 1958), affirmed 160 Tex. 348, 331 S.W.2d 737 (1958), such as enacting a penal code and establishing and maintaining a criminal justice system. In this, the State acts in selfdefense to preserve its existence by protecting its citizens in life, health and happiness. *Ex parte Flake*, 67 Tex.Cr.R. 216, 149 S.W. 146, 154 (1912) (Opinion on Rehearing).

Just as erroneously Judge Teague finds § 7.22(a)(1), and presumably all of Subchapter B, supra, is unreasonable, arbitrary and capricious in holding a corporation strictly liable for criminally negligent acts of its employees and agents because it does not require "proof that the appellant corporation itself did something criminally wrongful." at 820.

The theory of strict liability is not unprecedented, however. See *American Plant Food Corp. v. State*, 587 S.W.2d 679 (Tex.Cr.App.1979), a conviction for the offense of water pollution under Water Code prohibition that "[n]o person may discharge, or cause or permit the discharge of, any waste into or adjacent to any water in the state which will cause water pollution unless...." *Id.*, at 681, n. 1. From legislative history the Court found the Legislature intent was "to create a strict liability standard in which no proof of scienter is necessary." *Id.*, at 685. Also see *American Plant Food Corporation v. Sate*, 508 S.W.2d 598 (Tex.Cr.App.1974). In both instances the water pollution could only have occurred through acts or omissions of individuals, employees and agents of the corporation, rather than the "corporation, itself."

TEAGUE, Judge, dissenting.

Please, dear reader, believe me: Contrary to what you might surmise from this Court's majority opinion, the law that addresses corporate criminal liability, as reflected by the many law review articles and court decisions on the subject, is one big mess. I must, however, sadly report: The majority opinion actually does absolutely nothing to clear the air in this area of the law. In fact, I find that the majority opinion will actually add to the confusion that presently exists in this area of our law.

Without any limitation whatsoever, this Court granted the State's petition for discretionary review in order to review the decision of the Texarkana Court of Appeals in *Vaughan and Sons, Inc. v. State*, 649 S.W.2d 677 (Tex.App.–6th 1983), which declared that a private corporation in Texas could not be prosecuted for the offense of criminally negligent homicide that had been previously committed by one or more of its employees or agents. Contrary to the court of appeals' decision, the majority opinion of this Court holds generally that a private corporation doing business in Texas can be held strictly and automatically criminally liable for the personal negligent acts of its employees or agents, provided that at a later date the trier of fact finds that the employees' or agents' personal negligent acts were actually criminal. Given this Court's unlimited grant, what the court of appeals stated and held, and what the State argues in its petition for discretionary review, I respectfully dissent to the majority opinion's failure to "put some meat on the bones of that old corporation dog" that it has now discovered exists. I also dissent for other reasons that I will give.

Although I dissent, I nevertheless acknowledge that the law that addresses the civil and criminal liability of a private corporation in Texas and elsewhere has come a long way since the year 1250 when Pope Innocent IV decreed that because a corporation, although apparently then a "person", did not have a soul that could be damned, it could not be excommunicated from the Church. See Brickley, *Corporate Criminal Liability*, at page 7 (1986 edition).

As to what the boundaries of civil corporate liability might be in the future, this Court must, of course, defer to the Supreme Court of Texas. However, see *El Chico Corporation v. Poole et al.*, 732 S.W.2d 306 (Tex.1987). Given what the majority opinion states, it should be obvious to almost anyone that this Court will or should in the future subscribe to and apply where possible the principles of law that the Supreme Court announces in this area of the law.

Also, after the members of the Legislature have thoroughly digested the majority opinion, I predict that we will soon see more strict and automatic criminal liability statutes enacted. For example, the next

session of the Legislature should be able to enact a strict and automatic criminal liability statute making any natural parent or legal guardian or custodian of a young child strictly and automatically criminally liable for the personal negligent wrongs of the child, provided that a trier of fact finds that the child's negligent acts are criminal.

It is actually not the reasoning that the majority opinion uses to reach its conclusion, that a private corporation doing business in Texas falls within the statutory term "person", that concerns me. What actually concerns me lies in the fact that the majority opinion fails to give the bench and bar of this State any guidance as to how the concept of strict and automatic criminal liability, which it approves, either expressly or implicitly, is to be applied to future criminal cases involving corporate criminal defendants.

Although the appellant corporation in this cause did not expressly challenge in the trial court or on direct appeal the constitutionality of V.T.C.A., Penal Code, § 7.22(a)(1), upon which the majority opinion relies to hold the appellant corporation strictly and automatically criminally liable for the personal negligent acts of its employee-truck driver, which negligent acts were later determined by the trier of fact to be criminal acts of negligence, nevertheless, I find that if the issue is not before this Court expressly, it is at least before this Court implicitly. In any event, in the interest of judicial economy, this Court should address this issue at this time. However, because of reasons I will give, I would not first declare § 7.22(a)(1) to be unconstitutional, either facially or as applied, because it is violative of the due process and due course of law clauses of the respective Constitutions, but would, at this time, only declare that the information in this cause was subject to the appellant corporation's motion to quash. Alternatively, however, I would vote to declare § 7.22(a)(1) unconstitutional, both facially and as applied, because it is violative of the due process and due course of law clauses of the respective Constitutions.

The facts of this cause reflect that what has happened to many of us also happened to the appellant corporation's truck driver in this cause, namely, his assigned motor vehicle quit running; at the most unexpected and undesirable time and place—a little after noon in what is now a feeder lane that often terminates on what will ultimately be, we hope, the 290 North Free-

way in Houston, which I can personally attest is not, because of the amount of traffic that travels this stretch of the road both day and night, where, if one's motor vehicle has to quit running, one would like to see his motor vehicle quit running. Several hours later, approximately six, after unsuccessful rescue efforts by other company employees and agents to locate appellant and his truck had occurred, which delay occurred because the driver of the truck gave them the wrong location, he missed his then location by several miles, another vehicle drove into the back of the truck, causing the untimely and unfortunate deaths of its driver and a passenger. The driver of the truck, who was then in the truck's cab, was only slightly injured. The driver was charged but not prosecuted for committing the misdemeanor offense of criminally negligent homicide, apparently because he testified for the State. Another employee, who was several miles distant from the location where the accident occurred, was also accused of committing the same offense but was not prosecuted because he was given immunity from prosecution and testified for the State. Based upon the truck driver's and the employee at the company's headquarters negligent acts, the corporation was also charged, prosecuted, and convicted for committing the offense of criminally negligent homicide. A $5,000 fine was assessed as punishment, which I assume has been or will be passed on to consumers of the appellant corporation. The trial judge, however, did not also see fit to assess a "scarlet letter" type of punishment, such as requiring the corporation to place on the sides of all its trucks such signs stating "Killer corporation" or "BEWARE—CAUTION: THIS CORPORATION HAS BEEN FOUND GUILTY OF KILLING ANOTHER HUMAN BEING". See and compare *Goldschmitt v. State*, 490 So.2d 123 (Fla.App., 2 Dist.1986), where that court approved, as a condition of probation, the trial court's requirement that the convicted defendant in that cause affix to the bumper of his motor vehicle the label "CONVICTED D.U.I.—RESTRICTED LICENSE". After today, I assume that some of our innovative trial judges will, after a corporation has been found strictly and automatically criminally liable for committing a similar offense as was committed here, criminally negligent homicide, assess a "scarlet letter" type of punishment in addition to any fine. See, § 12.51(d), which appears to expressly authorize a trial judge to assess this type punishment in addition

to any fine assessed. Such should, of course, be the equivalent of assessing the death penalty for such a corporation.

V.T.C.A., Penal Code, § 7.22(a)(1), the majority opinion's authority for its holding, provides that a corporation may be held strictly and automatically criminally liable for the misdemeanor criminal negligent act or acts of its employees or agents. There are no exceptions under this procedural statute. A copy of the information that was filed against the appellant corporation is attached hereto as "Appendix A". As easily seen therein, no act of negligence, that was allegedly committed by either of the two named employees of the corporation, was facially an act that would constitute gross negligence. Furthermore, but contrary to Art. 21.15, V.A.C.C.P., which expressly requires that the act or acts of negligence that the State is going to rely upon to establish criminal negligence against *the accused* must be alleged in the information, and that "in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted with ... criminal negligence", it was only alleged in this information that the accused corporation committed the offense of "criminal negligence". Without more, this accusation is totally insufficient to accuse the appellant corporation with committing the criminal wrong of criminally negligent homicide. See *Graham and Utecht v. State*, 657 S.W.2d 99 (Tex.Cr.App.1983); *Cole v. State*, 556 S.W.2d 343 (Tex.Cr.App. 1977). And, there is no more. Given the plain wording of Art. 21.15, supra, it should be obvious to almost anyone that the information in this cause did not allege the offense of criminally negligent homicide against the appellant corporation, and for this reason the conviction should be reversed and the information ordered dismissed. The majority opinion, however, does not discuss the fact that the appellant corporation, either expressly or implicitly, attacked in the trial court the information for its defects of omission.

In order to convict the appellant corporation of criminally negligent homicide, see V.T.C.A., Penal Code, § 19.06, the State relied totally upon alleged personal negligent acts of the corporation's employees and the trier of fact's implicit finding that the negligent acts were in fact criminal negligent acts, which finding was then automatically imputed to the appellant corporation pursuant to § 7.22(a)(1). However, Art. 21.15, supra, does not provide for the automatic imputation of negligent acts by a third party to the accused, and the appellant corporation was not shown to be "a party", see V.T.C.A., Penal Code, § 7.01 and § 7.02. This information is clearly void.

In dissenting, it does not follow that I disagree with the majority opinion's primary, albeit general, holding, that a private corporation operating in Texas may be criminally prosecuted for the criminal wrongs of its agents or employees who, when they commit the criminal wrong, *are at that moment in time* acting on behalf of the corporation and within the course and scope of their employment. That would, of course, comport with the former law of this State that governed "accomplices and accessories", which is no more. Today, however, liability of a third person for the criminal acts committed by another person is now governed by the law of parties, see V.T.C.A., Penal Code, § 7.01 and § 7.02, which provision of our law is not implicated in this cause. My disagreement with the majority opinion lies in how the broad general holding that it makes is going to be applied in the future and not run afoul of the due process and due course of law clauses of the respective Constitutions. Without violating those sacred provisions, I do not believe that it can be done, and that is the reason I would, as an alternative measure, vote to declare § 7.02(a)(1) unconstitutional, both facially and as applied.

Given the plain and clear wording of § 7.22(a)(1), it is clear to me that in the type misdemeanor offense as here, criminally negligent homicide, I agree with the court of appeals that the Legislature did not clearly intend that a private corporation in Texas could be held strictly criminally liable solely for the personal negligent wrongs committed by its employees or

agents, which personal negligent acts are later determined by a trier of fact to have been criminal, or, if it did, its legal faux pas lies in the fact that in enacting the above statute it overlooked the requirements of due course and due process of law.

Professor Hamilton, whose law review article the majority opinion so heavily relies upon for authority, stated the following therein: "I could see no reason why corporations should be treated differently from individuals in this regard (that corporations should not have the benefit of all the protections of the criminal process)." Hamilton, "Corporate Criminal Liability", 47 *Texas Law Review* at 76. And yet, under § 7.22(a)(1), any private corporation doing business in Texas will always be treated differently from a human person. Does this not, in itself, cause § 7.22(a)(1) to be unconstitutional because it violates the respective equal protection clauses of the Constitutions?

Under § 7.22(a)(1), when does a private corporation in Texas know that it committed a criminal wrong? The answer is easy. Much like one who has been struck by lightning will know, the corporation will know exactly at the moment in time when a trier of fact returns a verdict implicitly or expressly stating that because the corporation's employees or agents were found to have personally committed a misdemeanor offense, which it has now determined to be criminal, the corporation is to be strictly and automatically criminally liable for committing that wrong.

In criminal law, the term "strict criminal liability" embraces the concept that a person who commits an act in violation of the law may be held criminally liable even though he might be innocent of any criminal intent. For example, in Texas, in the instance where an individual violates a traffic law, such as driving while intoxicated or speeding, a culpable mental state is not a requisite for charging the accused with committing those offenses. If the individual commits the act, he is, ipso facto, held

strictly criminally liable. See *Honeycutt v. State*, 627 S.W.2d 417, 421, fn. 4 (Tex.Cr. App.1982) (On original submission.) Texas, however, as reflected by the fact that strict criminal liability has been imposed only in the instance of a violation of a traffic law, as is true in most jurisdictions, has always looked upon strict criminal liability with disfavor because, as Professor Hippard, see "The Unconstitutionality of Criminal Liability Without Fault: An Argument for a Constitutional Doctrine of Mens Rea," 10 *Houston Law Review* at 1040, among others, has pointed out: "The imposition of criminal liability without proof of criminal blameworthiness not only flouts a basic premise of our criminal law, [that the criminal law is to be used to condemn and punish someone who has personally acted in a criminally blameworthy manner], but violates our constitutionally supported belief in the significance and dignity of each individual and in his ability to choose his own destiny."

A noteworthy exception to the rule that strict criminal liability statutes are looked upon with disfavor is "public welfare offenses", which offenses represent society's attempts to regulate nuisances that might affect or be detrimental to the general health, safety, and welfare of the citizenry.[1] These statutes are, of course, enacted pursuant to the police power of the government. These crimes are actually regulatory measures, regulating sensitive areas such as the distribution of food and drugs to the general public, and are enacted to protect the public and maintain social order over which the general public is unable to control itself. These regulatory offenses are usually malum in se and not just malum prohibitum type offenses. The burden of the hazards inherent in dealing with such sensitive areas must be allocated in the interest of the "larger good" to those who are in the best position to prevent the harm. See Arkin et al., *Business Crime*, Vol. 4, Chapter 16. Also see and compare Sayre, "Public Welfare Offenses," 33 *Colum.L.Rev.* 55 (1933).

---

1. Given the context in which I use the phrase "public welfare offenses", it should be obvious that Judge Clinton, see his concurring opinion, has totally misunderstood the point I attempt to make at this time.

Professor Hippard, in his above well written law review article, implicitly advocates that there should be no exceptions, and no law should ever be enacted that would permit the use of criminal laws to punish the blameless. (1052). Although I am in agreement with his general proposition that criminal laws should not be used to punish the blameless, I must part company with him when it comes to the "public welfare". I am unable to subscribe to Hippard's viewpoint because I do not find where the general public is equipped to protect itself from the distribution of such things as impure drugs or tainted food; not even through strict civil liability, stringent licensing requirements, and strong inspection regulations, as easily seen on the "Marvin Zindler" show that is telecast in Houston most nights of the week. Distribution of impure drugs or tainted food is, in my view, a malum in se act, and such is a proper subject for regulation through our criminal law, which can effectively deal the violating corporation the death penalty. However, excepting "public welfare" offenses, I wholeheartedly agree with Professor Hippard that it is constitutionally impermissible to enact strict criminal laws that criminalizes any "person" without fault, as § 7.22(a)(1) obviously does. In that instance, there should be a "means rea" requirement, which § 7.22(a)(1) does not require.

Furthermore, in this instance, the Legislature of Texas did not enact § 7.22(a)(1) under its police power as legislation that would criminalize a private corporation for the negligent conduct of another. Here, the criminal liability of the appellant corporation is established and determined solely through the enactment of a strict and absolute criminal procedural law.

The majority opinion, without taking into account the distinction between an offense created on behalf of the public welfare and an offense that is totally unrelated to the public welfare, i.e., making it criminal for a private corporation to be strictly and automatically held criminally responsible for the personal negligent acts of its employees or agents that are later determined by some trier of fact to be criminal negli-

gent acts, holds that the Legislature may enact non-police power legislation to hold a private corporation criminally liable by imputing to the corporation acts of ordinary and personal negligence of its employees that are later determined by some trier of fact to be criminal negligent acts. I find that such cannot occur without violating the due process and due course of law clauses of the respective constitutions because such is unreasonable, arbitrary, and capricious. As previously stated, because § 7.22(a)(1) permits private corporations to be treated differently than humans, it is patently violative of the equal protection clauses.

I am unable to understand how any criminal law can effectively cause our "absent minded" acts, negligence if you will, to cease to exist. If that were possible, I would advocate that such a law be immediately enacted by our Legislature.

Again, I emphasize: The criminal liability of the corporation in this instance is not based upon some form of regulatory criminal type statute which can be classified as a "public welfare statute", and I can find no public policy justification in § 7.22(a)(1) that might warrant the finding that the corporation's liability is predicated upon a "public welfare statute." I find and conclude that to strictly criminalize a private corporation doing business in Texas for the personal criminal negligent acts of its employees or agents, pursuant to § 7.22(a)(1), amounts to arbitrariness and nonsense. Even if the word "knowingly" were read into § 7.22(a)(1), I still could not understand how that would justify criminalizing a private corporation for personal negligent acts of its agents or employees, which are later determined by some trier of fact to be criminal; civilly liable, yes; criminally liable, no.

Based upon the majority's reasoning, the Legislature of this State is now free to enact legislation that would impute criminal negligent activity by a third person who is under the control of another individual or person, such as a parent. If that is the law, then the law is truly an ass. If that is the law, *El Chico Corporation* and *Joleemo Corporation,* see supra, get

ready for things to come because you ain't seen nothing yet. Parents of negligent children, you may also get ready because once the members of the Legislature have completely digested the majority opinion I predict it will not be long before a child's negligent acts, which are later determined to be criminal by some trier of fact, will be imputed to the child's parents, who are, at that instant in time, to be criminalized solely because his, her, or their child committed a personal criminally negligent act.

It should be obvious to anyone that now that the water has passed under the bridge it is time for the author of the majority opinion to restart the motor on this Court's majority opinion, which apparently has unexpectedly and untimely quit running, and more clearly explain how the personal negligence of a corporation's employees can be imputed to the corporation, and solely for that reason criminalize and stigmatize the corporation.

What I find that the court of appeals forgot to state in its opinion is the following: "We should make haste slowly when it is in the direction of imputing to an individual or a corporation the personal negligent acts of another, which are later determined to be criminal, which automatically criminalizes the individual or a corporation."

In this instance, the issue is whether a private corporation can be held summarily criminally liable for *any* personal negligent act committed by an employee or agent, that turns out to be criminal, and there be no necessity to show that the corporation had any connection whatsoever with the commission of the actual personal criminal negligent act that the employee or agent committed. This, of course, is strict and automatic criminal liability at its best.

After having read the decisions of other jurisdictions that are cited in the majority opinion, one certainly cannot disagree with Professor Hamilton's following statements: "On the other hand, practically all other common-law jurisdictions recognize corporate criminal liability. This unanimity, however, is less impressive than might first appear. Most cases upholding criminal liability are as devoid of reasoned analysis as are the Texas cases rejecting liability: They either assume without discussion that corporations should be criminally responsible or merely argue that a corporation falls within the term 'person' used in some criminal statute." See, for example, the inferior Pennsylvania court's decision of *Commonwealth v. Mc Ilwain School Bus Lines*, 283 Pa.Super. 1, 423 A.2d 413 (1980), which the majority opinion relies upon so heavily. A case from Pennsylvania that is much closer in point is that State's Supreme Court's decision of *Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825 (Pa.1959), in which that court held that vicarious absolute liability, which is based upon the tort doctrine of respondeat superior, must be limited to "petty misdemeanors involving only light monetary fines." Given the possible punishment that may be assessed a private corporation, in this State, see § 12.51(d), there is no misdemeanor crime for which a corporation is found guilty that can be categorized or classified as a "petty misdemeanor". As Justice Spaeth of the Pennsylvania Superior Court put it in the concurring opinion that he filed in *Commonwealth v. Koch*, 297 Pa.Super. 350, 443 A.2d 1157, 1162 (1982): "But to label [a corporation], not only a tortfeasor but a 'criminal killer'—for that is how one convicted of [criminally negligent homicide] is labeled—seems to me to serve no useful purpose. It doesn't compensate the victim. It won't deter anyone [from being negligent in the future] ... It can only humiliate the defendant and inflict upon him the economic losses and damage to reputation incident to having a criminal record ..."

Given the fact that the issue here does not involve the application of the police powers of the State, and also given the fact that imposition of criminal liability usually requires proof that the Appellant corporation itself did something personally criminally wrongful, I ask: As far as the personal act of negligence that caused the death of the victim in this cause, what personal negligent act did the appellant corporation commit, which personal negligent act was later determined to be criminal? How was the corporation put on notice that its

truck was going to quit running when it did and at the place it did, after its driver had successfully made a delivery? How could the corporation have predicted that the driver would not take every reasonable precaution to remove the truck from the highway? How could the corporation have predicted that a collision would occur, much less that death would result? Predictability or foreseeability, alas, is nowhere to be found in the majority opinion, which should be entitled "Private Corporations, Beware. Another Almanza the Terrible has been turned loose by an aggressive and assertive majority of this Court to do dastardly deeds to *you* !!!"

In the trial court, the appellant corporation, through its attorney, asserted in support of the motion to quash the information that he filed, that "The Grand Jury of Harris County, Texas attempts to charge Defendant corporation with the offense of Criminally Negligent Homicide, which is an offense not capable of commission by a corporation or business association by reason of the requirement in the Criminally Negligent Homicide Statute that there exists a personal state of mind at the time of occurrence of the incident which gives rise to the charge." Unfortunately, the motion to quash does not contain any discussion, argument, or authorities. It did not expressly challenge the constitutionality of V.T.C.A., Penal Code, § 7.22(a)(1), either facially or as applied. However, I find that it implicitly made that challenge.

On direct appeal, the Sixth Court of Appeals in *Vaughan v. State*, 649 S.W.2d 677 (Tex.App.—6th 1983), only addressed the appellant corporation's first point of error, which was phrased as follows: "Penal code provisions of corporations and other artificial legal entities do not extend to any type of criminal homicide. Therefore the trial court erred in failing to grant appellant's motion to set aside the information." (Page 4, appellant's brief.) The appellant corporation's attorney on appeal reached the following conclusion: "For the reason that corporations should not be subject to prosecution for any type of homicide, the conviction of Appellant herein should be reversed and the Information dismissed." (Page 9, appellant's brief.) Therefore, giv-

en the above, it is obvious to me that the appellant corporation implicitly at a minimum contended on direct appeal that a private corporation doing business in Texas cannot be held strictly criminally liable solely for the personal negligent acts of its employees and agents, which are later determined to be criminal. The court of appeals sustained the appellant corporation's point of error.

This Court's majority opinion has disagreed with the court of appeals holding, and holds that because the offense of criminally negligent homicide may be committed by a "person", and because, by definition, a corporation is a "person", and a "person" can commit the offense of criminally negligent homicide, ergo, a private corporation can be prosecuted for the offense of criminally negligent homicide. Having reached that conclusion, the majority opinion's motor, much like the corporation's employee's truck's motor did in this cause, unexpectedly and untimely quits running. I have concluded that given the issues that are implicated in this case, the majority opinion quits too soon, and needs to be cranked up and driven a few more miles. Otherwise, I fear that the majority opinion will be the linchpin for much bad law regarding corporate criminal liability in this State.

I agree with the court of appeals' implicit holding that there is nothing in § 7.22(a)(1) that might reflect or indicate a legislative intent that a "person" might be held vicariously strictly criminally liable for the negligent acts of another "person".

In *Standard Oil Company of Texas v. United States*, 307 F.2d 120 (5th 1962), Circuit Judge Brown agreed that "a servant is not acting within the scope of his employment unless his acts are motivated by a purpose to benefit the master or ... to further the master's business." If this is true, and I believe it is, I must ask: How does a private corporation benefit from negligent acts of an employee, to the extent that the personal vicarious acts of negligence of the employee are sufficient, standing alone, to be imputed to the corporation so that the corporation is held strictly, absolutely, and automatically criminally

responsible for the employee's personal negligent acts, which are later determined to be criminal? I also must ask: What law is there in this State that holds a private corporation criminally liable for the personal negligence of its employees or agents, wholly unrelated to knowledge, actual or constructive? Again, we are not dealing with a "public welfare crime", such as the distribution of harmful drugs, narcotics, food, etc., to the general public, where injury to the public interest comes from the act or thing quite without regard to the antecedent circumstances, motivation or conduct; we are dealing with the situation where a private corporation is held absolutely, strictly, and automatically criminally liable solely for the personal negligent acts of its employees and agents. Where is there in § 7.22(a)(1) the indication that the Legislature intended a "person" to be held strictly criminally liable through the commission of an "absent minded" act by another? As Judge Brown pointed out in *Standard Oil Corporation of Texas*, supra, "The spirit of the doctrine [of statutory construction] which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute ..."

Today, this Court should exercise its constitutional authority and hold that the Legislature in this instance violated the due process and due course of law clauses of the respective constitutions when it enacted § 7.22(a)(1). At a minimum, this Court should resist the temptation, outside of "public welfare offenses", to put the judi-

cial gloss of approval to the overuse of strict and automatic criminal liability in situations as we have at Bar. E.g., Perkins, "Essay: Criminal Liability Without Fault: A Disquieting Trend", 68–2 *Iowa Law Review* (1982/83). In the type of act we are dealing with here, a personal negligent act, that is later determined to be criminal, this Court is actually subscribing, to the concept that "without fault there is a criminal wrong." See Perkins, supra. Also see Erlinder, "Mens Rea, Due Process, and the Supreme Court: Toward a Constitutional Doctrine of Substantive Criminal Law", 9 *American Journal of Criminal Law* 163 (1981). This is wrong, wrong, wrong, oh so terribly wrong.

I find that the majority opinion, in creating the beast of "criminal no fault", when it comes to private corporate criminal liability, may have actually created a far larger and more uncontrollable beast than it did when it created "Almanza the Terrible".

Here, however, I find it is unnecessary to declare § 7.22(a)(1) unconstitutional, either facially or applied. Given the plain wording of Art. 21.15, supra, I would simply hold that the offense of criminally negligent homicide has not been properly alleged against the appellant corporation, and therefore would remand the cause to the court of appeals to first decide this issue. Alternatively, however, I vote to declare § 7.22(a)(1) unconstitutional, both facially and as applied, because it violates both due process and due course of law.[2]

For the above and foregoing reasons, I respectfully dissent to the majority opinion.

---

**2.** I find that it is rather interesting that the issue of whether a corporation is in fact "a person" may become an issue in the hearings regarding the confirmation of Judge Bork. For an interesting article on this point, see Mintz, "Judge Bork: Trapped by 'Personhood'? Senate could make it tough for him", *The National Law Jour-* *nal,* August 31, 1987. Mintz has done an admirable job in giving the reader a short history why a corporation is a "person" protected by the 14th Amendment to the federal constitution, and, for this, if no other reason, I highly recommend it to the reader.

NO. 553194 · APPENDIX A

FILED: APRIL 19, 1979

THE STATE OF TEXAS
VS.

VAUGHAN AND SONS, INC., A CORPORATION
4802 GULF FREEWAY
HOUSTON, TEXAS
MISDEMEANOR CHARGE:
CRIMINAL NEGLIGENT HOMICIDE Vol. & Page 140 AX GM

CAUSE NO.:
HARRIS COUNTY CRIMINAL COURT AT LAW NO.
COUNTY CRIMINAL COURT AT LAW NO. 8 553194 FIRST SETTING DATE:

DATE PREPARED: 4/18/79 BY: bj DA NO.:
AGENCY: O/R NO.:
NCIC CODE: ARREST DATE:
RELATED CASES: NCIC 0909 TUC 56

BAIL $ NONE

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

Comes now the undersigned Assistant District Attorney of Harris County, Texas, in behalf of the State of Texas, and presents in and to County Criminal Court at Law No. _____ of Harris County, Texas, that in Harris County, Texas,

VAUGHAN AND SONS, INC., A CORPORATION

hereafter styled the Defendant, heretofore on or about _____ NOVEMBER 13, 1978 _____, then and there unlawfully

by criminal negligence cause the deaths of Paul Harvy Krenzke and Geina Rena Wall, hereinafter styled the Complainants, and in support thereof would more specifically present that:

I.

On or about November 13, 1978, Johnny Hendricks was the agent of the Defendant and while acting in behalf of the Defendant and within the scope of his employment, the said Johnny Hendricks operated a motor vehicle owned by the Defendant and, while so doing, caused the vehicle in which the Complainants were traveling to collide with the Defendant's vehicle thereby causing the deaths of the Complainants by the following criminally negligent conduct:

By parking and leaving the Defendant's vehicle standing upon the paved and main-traveled part of a highway outside of a business and residential district when it was possible not to so park and leave the vehicle standing.

By parking and leaving the Defendant's vehicle standing upon the left-hand side of a one way roadway.

By failing to remove the Defendant's vehicle from the paved and main-traveled part of a highway outside of a business and residential district when a duty to so act in accordance with the law existed and it was possible to so remove the Defendant's vehicle.

By failing to equip the Defendant's vehicle with at least three flares, lanterns or reflectors for use during its operation upon a divided highway at any time from a half hour after sunset to a half hour before sunrise when a duty to so equip the Defendant's vehicle in accordance with the law existed and

By failing to display fusses, lanterns, reflectors or flares as required by law when the Defendant's vehicle was stopped for more than ten minutes upon a roadway of a divided highway.

II.

On or about November 13, 1978, Paul Tawater was the agent of the Defendant and while acting in behalf of the Defendant and within the scope of his office and employment, the said Paul Tawater failed to equip the Defendant's vehicle for its operation by Johnny Hendricks when a duty to so equip the vehicle in accordance with the law existed and that such failure constituted criminal negligence which caused the vehicle in which the Complainants were traveling to collide with the Defendant's vehicle thereby causing the deaths of the Complainants and further,

That on or about November 13, 1978, Paul Tawater, while acting as an agent in behalf of the Defendant and within the scope of his office and employment, failed to remove the Defendant's vehicle from the paved and main-traveled part of a highway when a duty to act in accordance with the law existed and it was possible to so remove the vehicle and that such failure constituted criminal negligence which caused the vehicle in which the Complainants were traveling to collide with the Defendant's vehicle thereby causing the deaths of the Complainants.

AGAINST THE PEACE AND DIGNITY OF THE STATE.

*Richard F. Callaway*
ASSISTANT DISTRICT ATTORNEY OF HARRIS COUNTY, TEXAS.